**CALVERT INSURANCE COMPANY,**
**Plaintiff,**

v.

**S & L REALTY CORP., S & L Management Corp., & Kittoria Washington, Defendants.**

**No. 95 Civ. 5725 (RWS).**

United States District Court,
S.D. New York.

May 15, 1996.

As Amended May 31, 1996.

---

Caesar & Napoli, New York City (Jeffrey Brown, of counsel), for Plaintiff.

Piazza, D'Addario & Frumin, Brooklyn, NY (Ron D'Addario, of counsel), for Defendant S & L Realty Corp.

Arye, Kors, Lustig & Sassower, New York City (Joel L. Getreu, of counsel), for Defendant Kittoria Washington.

## OPINION

SWEET, District Judge.

Plaintiff Calvert Insurance Co. ("Calvert") has moved for summary judgment pursuant to Rule 56(b), to declare that it is not obligated to defend or indemnify Defendants S & L Realty and S & L Management Corp. (collectively, "S & L") in an underlying personal injury action brought by Defendant Kitoria Washington ("Washington") against S & L based on Washington's alleged exposure to chemical fumes or vapors.

For the reasons discussed below, Plaintiff's motion for summary judgment will be denied.

### Prior Proceedings

Calvert brought this action on August 2, 1995, seeking a judgment declaring that it is not obligated to defend or indemnify S & L in Washington's underlying personal injury action. The instant motion was heard and considered finally submitted on March 27, 1996.

### The Facts, the Parties and the Underlying Action

S & L Realty owns, and S & L Management Corp. manages, a complex of buildings at 76 Clay Street in Brooklyn, New York ("the Clay Street property"). S & L Realty leases the ground floor to Professional Service Centers for the Handicapped ("PSCH"), which operates a mental health facility on the premises. In August 1994, Washington was employed as a counselor by the tenant, PSCH. In August 1994, PSCH hired a floor contractor to install a new floor in the Clay Street property. The contractor laid a plywood base and cemented or glued tiles to it. The work area was not ventilated during the installation of the new floor—the windows were closed and the air conditioning on. While work was ongoing on August 21, 1994, the cement fumes caused several PSCH employees to become ill. The New York City Fire Department evacuated the Building, and later, after ventilation had dissipated the fumes, allowed reentry.

On August 30, 1994, Washington brought suit against S & L in the Supreme Court of the State of New York, County of New York, for bodily injuries allegedly sustained on August 21, 1994 as a result of S & L's negligence. Washington alleged in her Complaint that she had been injured as a result of exposure to the fumes from the cement used to install a plywood floor in the Clay Street property owned by S & L and leased by Washington's employer.

Calvert had issued a commercial general liability policy to S & L covering the Clay Street property. The policy provided that Calvert would defend and indemnify S & L for " 'bodily injury' and 'property damage' to which this insurance applies caused by an 'occurrence' " The policy at issue contains a "total pollution exclusion" clause applying to injury or damage caused by "pollutants."[1]

### Legal Standard for Summary Judgment

A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a

---

1. Specifically, the exclusion provides:
   This insurance does not apply to:

   "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

   "Pollutants" means any solid, liquid gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acid, alkalis, chemicals, and waste.

matter of law. *See* Fed.R.Civ.P. 56(c); *Silver v. City Univ. of New York,* 947 F.2d 1021, 1022 (2d Cir.1991).

In the Second Circuit, "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party. *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 2556 n. 2, 91 L.Ed.2d 265 (Brennan, J., dissenting)). The Second Circuit has stated that, when "[v]iewing the evidence produced in the light most favorable to the nonmovant ... a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991).

### A Factual Dispute Bars Summary Judgment

It is well settled in New York that "an insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy." *Fitzpatrick v. American Honda Motor Co.,* 78 N.Y.2d 61, 65, 571 N.Y.S.2d 672, 575 N.E.2d 90 (1991) (*citing Technicon Elecs. Corp. v. American Home Assur. Co.,* 74 N.Y.2d 66, 73, 544 N.Y.S.2d 531, 542 N.E.2d 1048 (1989); *see also, Ogden Corp. v. Travelers Indem. Co.,* 924 F.2d 39, 41 (2d Cir.1991). This rule comports with "the oft-stated principle that the duty to defend is broader than the duty to indemnify." *Id.* (citations omitted).

Thus, "an insurer may be contractually bound to defend even though it may not ultimately be bound to [indemnify], either because its insured is not factually or legally liable or because the occurrence is later proven to be outside the policy's coverage." *Id.* Accordingly, the courts of New York have "refused to permit insurers ... to avoid their obligation to defend and have held that the duty to defend exists '[i]f the complaint contains any facts or allegations which bring the claim even potentially within the protections

purchased.'" *Id.* 74 N.Y.2d at 66, 544 N.Y.S.2d 531, 542 N.E.2d 1048 (citing *Technicon,* 74 N.Y.2d at 73, 544 N.Y.S.2d 531, 542 N.E.2d 1048).

An insurer can avoid this duty to defend only if it "establishes that the 'allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and further, that the allegations, *in toto,* are subject to no other interpretation.'" *Ogden Corp.,* 924 F.2d at 41 (quoting *Technicon,* 74 N.Y.2d at 73, 544 N.Y.S.2d 531, 542 N.E.2d 1048).

■ Calvert has not established that Washington's allegations are entirely within the policy's pollution exclusion. Calvert relies on several New York cases which have held total pollution exclusion clauses to be "clear and unambiguous," and banned coverage for injuries caused by chemical vapors and fumes. *See Demakos v. Travelers Ins. Co.,* 205 A.D.2d 731, 613 N.Y.S.2d 709 (2d Dep't.1994), *Henry Modell & Co. v. General Insurance Co,* 193 A.D.2d 412, 597 N.Y.S.2d 75 (1st Dep't.1993), and *Budofsky v. Hartford Ins. Co,* 147 Misc.2d 691, 556 N.Y.S.2d 438 (Sup.Ct. Suffolk Co.1990). According to Calvert, the questions of how an injury occurred and whether the acts causing an injury were intentional, reckless, or negligent are not relevant to the scope of a pollution exclusion clause. Instead, Calvert asserts, this and similar pollution exclusion clauses focus solely on the agent causing the harm.

The clause, however, is equally subject to a narrow interpretation. New York courts have interpreted almost identical pollution exclusion clauses "to apply only to instances of environmental pollution." *Schumann v. New York,* 160 Misc.2d 802, 610 N.Y.S.2d 987, 990 (N.Y.Ct.Cl.1994). *See also Karroll v. Atomergic Chemetals Corp.,* 194 A.D.2d 715, 600 N.Y.S.2d 101 (2d Dep't 1993) (holding that an exclusion clause similar to the one at issue here could be "interpreted to apply only to instances of environmental pollution," and therefore did not relieve the insurer of its obligation to defend the insured merely because the injury was caused by a "pollutant."). Furthermore, because the definition of a "pollutant" in the exclusion policy at issue here makes no reference to glue or

cement, the Plaintiff has not met its burden of establishing that the allegations in the underlying complaint arose from the "discharge," "disposal," "seepage," "migration," "release" or "escape" of a pollutant, which are terms of art in environmental law.[2]

■ Moreover, even if fumes or vapors from the cement constitute pollutants under the exclusion, Calvert can only escape its obligation to defend S & L if it can show that no "reasonable possibility [exists] that the insured may be held liable for some act or omission covered by the policy." *A. Meyers & Sons v. Zurich American Insurance Group*, 74 N.Y.2d 298, 302, 546 N.Y.S.2d 818, 545 N.E.2d 1206 (1989). The underlying complaint alleges, *inter alia*, negligence, failure to inspect, and failure to remedy a dangerous condition which was initially created by the chemical fumes or vapors from the floor cement. Where, as here, the underlying action is based not only on an alleged pollutant, but on various allegedly negligent acts and omissions of the insured, the injuries complained of may reasonably be found to have arisen from improper ventilation or the failure to provide proper protective devices.

■ As noted above, the duty of an insurer to defend is broader than its duty to pay. Thus, as the New York Court of Appeals has stated, "[the duty to defend] includes the defense of those actions in which alternative grounds are asserted, even if some are without the protection purchased. . . . If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be." *Ruder v. Seaboard Surety Co.*, 52 N.Y.2d 663, 669–70, 439 N.Y.S.2d 858, 422 N.E.2d 518 (1981).

Plaintiff here has failed to establish that the vapors or fumes from the cement fall within the pollution exclusion clause of the policy issued by Calvert to S & L, and have

raised a genuine question of fact as to whether the fumes were the sole cause of Washington's injuries, or whether those injuries were also caused by a negligent failure to provide proper ventilation or protective devices.

### Conclusion

For the reasons stated above, Calvert's motion for summary judgment pursuant to Rule 56(b) is denied.

It is so ordered.

---

2. Additionally, as a matter of policy, it would be inappropriate to apply this statutorily required exclusion clause, intended to prevent industrial polluters from spreading the risk of pollution to the insurance industry, to insureds who are not engaged in the industrial or commercial activity that causes the pollution. *See Autotronic Systems, Inc. v. Aetna Life and Casualty*, 89 A.D.2d 401, 456 N.Y.S.2d 504, 505–06 (3d Dep't 1982) ("[t]he clear purpose of the statutorily required exclusion is to strengthen New York's environmental protection standards by imposing the full risk of loss due to personal injury or property damage from pollution upon the commercial or industrial enterprise that does the polluting. . . .").