735 A.2d 100

**MADISON CONSTRUCTION COMPANY, Appellant,**

**v.**

**The HARLEYSVILLE MUTUAL INSURANCE COMPANY,
Nicholas Ezzi, Brian Murtaugh, Kelran Associates, Inc.,
and Euclid Chemical Company, Appellees.**

Supreme Court of Pennsylvania.

Submitted Jan. 13, 1998.

Decided July 27, 1999.

Reargument Denied Oct. 8, 1999.

596

Alan Greenberg, Philadelphia, JoAnne Eskin Sutkin, Mount Laurel, for Madison Const. Co.

Lee M. Epstein, Philadelphia, for Amicus-Betz Laboratories, Inc.

William T. Salzer, Philadelphia, for Harleysville Mut. Ins. Co.

Steven R. Waxman, Philadelphia, for Elucid Chemical Co.

Alfred V. Altopiedi, Philadelphia, for Nicholas Ezzi.

Andrew A. Borek, Philadelphia, for Brian Burtaugh and Kelran Associates, Inc.

Edward M. Dunham, Jr., Philadelphia, for Amicus-Aetna Cas. and Sur. Co.

David E. Sandel, Jr., Philadelphia, for Amicus-Ins. Environmental Law Ass'n.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

SAYLOR, Justice.

The issue in this declaratory judgment action is whether a pollution exclusion clause in a policy of commercial general liability insurance issued to Appellant, Madison Construction Company ("Madison"), by Appellee, Harleysville Mutual Insurance Company ("Harleysville"), relieves Harleysville of its obligation to defend Madison in an underlying personal injury action. We conclude, as did the en banc Superior Court, 451 Pa.Super. 136, 678 A.2d 802, that the pollution exclusion clause operates to bar coverage in the present case, and therefore affirm.

The events giving rise to this litigation are as follows: In 1991, Madison was engaged in pouring and curing concrete utility trenches at the Boeing/Vertol Helicopters Facility. To cure the concrete, Madison applied a compound known as Euco Floor Coat or Eucocure. While this was being done, the construction area was enclosed in an "envelope" of polyethylene sheeting. According to his subsequently filed complaint, Nicholas Ezzi, a Boeing employee, was summoned to the construction area to investigate a strong odor. Ezzi alleges that as he attempted to set up an exhaust fan for the fumes emanating from the curing agent, he was overcome by the fumes, lost consciousness, and fell into an excavation site, sustaining severe and permanent injuries.

Ezzi filed a negligence action, naming as defendants Madison, a subcontractor; Kelran Associates, Inc., the general contractor; and Brian Murtaugh, a Kelran project superinten-

dent. Kelran and Murtaugh joined Euclid Chemical Company, the manufacturer of Euco Floor Coat, as an additional defendant.

Madison was insured under a commercial general liability policy issued by Harleysville. The policy contained a clause requiring Harleysville to defend Madison in any lawsuit that fell within the parameters of coverage. Madison informed Harleysville of the accident shortly after it occurred. Harleysville denied coverage and refused to defend on the basis of the policy's pollution exclusion clause,[1] which reads as follows

2. Exclusions.

This insurance does not apply to:

. . .

f.(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

. . .

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor....

The policy defines "pollutants" as

any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals

---

1. The Harleysville policy contained the most recent, or "absolute," version of the clause. For a discussion of the development of the pollution exclusion clause, see *Comment: The Pollution Exclusion Clause in Pennsylvania*, 56 U. Pitt. L.Rev. 885, 893 (Summer 1995).

and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Harleysville maintained that Euco Floor Coat was a pollutant within the meaning of the policy. Madison then filed the present declaratory judgment action to resolve the issue of whether Harleysville was contractually obligated to provide coverage. Both parties moved for summary judgment.

The trial court denied Harleysville's motion for summary judgment and entered summary judgment in favor of Madison. In the opinion in support of its order, the trial court considered first the meaning of the term "pollutant" in the context of a pollution exclusion clause. After noting that the appellate courts of the Commonwealth had not yet addressed the issue, the trial court chose to adopt the interpretation set forth by the intermediate appellate court of North Carolina in *West American Ins. Co. v. Tufco Flooring*, 104 N.C.App. 312, 409 S.E.2d 692, *appeal dismissed as improvidently granted*, 332 N.C. 479, 420 S.E.2d 826 (1992).

In that case, Tufco, a floor resurfacing business, used a styrene monomer resin in the course of resurfacing the floors in certain areas of a Perdue chicken processing plant. Vapors or fumes from the resin allegedly contaminated chicken stored in a nearby cooler. Relying on a pollution exclusion clause similar to the one at issue here, the insurer, West American, refused to provide coverage for Perdue's claim against Tufco. The trial court granted summary judgment to Tufco and Perdue in their declaratory judgment action against West American. The Court of Appeals affirmed, reasoning, in pertinent part, that

Tufco did not bring the vapors or fumes which invaded the chicken to the Perdue plant. Rather, Tufco brought an unadulterated, pure raw material, styrene monomer resin, in one-gallon metal cans with screw-on caps. When this raw material was brought onto the site, it was neither an "irritant [nor a] contaminant." It was a raw material used by Tufco in its normal business activity of resurfacing floors. Yet, to be a "pollutant" under the exclusion, a substance

brought onto the site must be precisely that, an "irritant or contaminant."

*Id.* at 322, 409 S.E.2d at 698.

Similarly, the trial court declared in the present case, what Madison brought to the work site was not vapors or fumes but a pure raw material, Euco Floor Coat, which was contained in covered, one-gallon cans. Far from being an unwanted "irritant" or "contaminant," the court reasoned, Euco Floor Coat was a necessary tool of Madison's trade; in fact, Madison's contract with Kelran required it to use such a curing compound. Therefore, the trial court concluded that the policy's definition of "pollutants" was clear and unambiguous and did not extend to the substance at issue, Euco Floor Coat.

Although the trial court could have rested its decision that the exclusion did not apply upon that conclusion alone, it also considered whether there had been a discharge, dispersal, or similar action of the allegedly polluting substance for the purposes of the exclusion. Again the trial court turned to *Tufco* for guidance. According to the North Carolina court,

> [t]he operative policy terms of the pollution exclusion clause imply that there must be a discharge into the environment before coverage can be properly denied. The operative terms in the version of the pollution exclusion clause at issue in this case are "discharge," "dispersal," "release," and "escape." While they are not defined in the policy, the terms "discharge" and "release" are terms of art in environmental law and include "escape" by definition and "dispersal" by concept.

*Id.* at 324, 409 S.E.2d at 699 (footnote excluded). Although the absolute version of the pollution exclusion clause, unlike its predecessor, did not include language specifying a discharge of pollutants "into or upon land, the atmosphere or any water course or body of water . . . ," the court was convinced by its review of the exclusion's history that the omission was of no moment. Thus, the court reasoned "that any 'discharge, dispersal, release, or escape' of a pollutant must be into the environment in order to trigger the pollution exclusion clause

and deny coverage to the insured" and that the discharge at issue, "confined to a cooler within a chicken processing plant," did not qualify. *Id.* at 325, 409 S.E.2d at 700. Persuaded by the North Carolina court's analysis, the trial court in the present case concluded that since the alleged pollutant, Euco Floor Coat, had been contained within the polyethylene envelope at all times, there had been no discharge of the substance into the environment and therefore no event to which the pollution exclusion clause applied.

A divided panel of the Superior Court (Olszewski, J.; Cavanaugh, J., concurring in the result; and Wieand, J., dissenting without opinion) affirmed the trial court's entry of summary judgment in favor of Madison, but on a different ground. The lead opinion by Judge Olszewski rejected the trial court's conclusion that the vapors emanating from the floor covering were not pollution.

> While the floor-covering material itself was a necessary instrument of Madison's work, the vapors, however unavoidable, were not. They were an unwanted irritating waste product of the floor covering, and thus could be construed to fit within the policy's definition of pollution.

Op. at 145, 678 A.2d 802.[2] Judge Olszewski concluded, however, that the pollution exclusion was ambiguous in light of the existence of two contrary schools of thought concerning its interpretation. According to one school of thought, the exclusion did not apply where the pollution in question was not environmental or industrial in nature; according to the other, the exclusion was indeed absolute and applied to any set of facts that came within the literal meaning of its terms.[3]

**2.** The panel's opinion was withdrawn when the Superior Court granted reargument *en banc. See infra.*

**3.** As examples of the former, see *Atlantic Mut. Ins. Co. v. McFadden,* 413 Mass. 90, 595 N.E.2d 762 (1992) (holding that exclusion did not apply to lead paint poisoning); *Westchester Fire Ins. Co. v. City of Pittsburg, Kansas,* 768 F.Supp. 1463 (D.Kan.1991) (same, regarding exposure to non-toxic pesticide), *aff'd sub nom. Pennsylvania Nat'l Mut. Cas. Ins. Co. v. City of Pittsburg,* 987 F.2d 1516 (10th Cir.1993); *Tufco,* 104 N.C.App. at 324, 409 S.E.2d at 699. As examples of the latter, see *St. Leger v. American Fire & Cas. Ins. Co.,* 870 F.Supp. 641 (E.D.Pa.1994) (applying exclusion to inhalation or ingestion of lead

Relying on the Superior Court's decision in *Cohen v. Erie Indemnity Co.*, 288 Pa.Super. 445, 432 A.2d 596 (1981), Judge Olszewski reasoned that "[t]he mere fact that several appellate courts have ruled in favor of a construction denying coverage, and several others have reached directly contrary conclusions, viewing almost identical policy provisions, itself creates the inescapable conclusion that the provision in issue is susceptible to more than one interpretation." Op. at 451, 432 A.2d 596 (quoting *Cohen*, 288 Pa.Super. at 451, 432 A.2d at 599). Accordingly, he concluded, the pollution exclusion clause was ambiguous and therefore to be construed in favor of the insured.

The Superior Court granted reargument *en banc*. The *en banc* court reversed the trial court, concluding that the pollution exclusion clause clearly and unambiguously applied to relieve Harleysville of its obligation to defend Madison. The court found no language in the exclusion that limited its application, implicitly or explicitly, to instances in which a pollutant had escaped "into the environment." As for the substance at issue, the court reasoned as follows:

> This court simply cannot construe the policy language any way other than by finding that the fumes in the instant case were pollutants. First, the language of the exclusion provision clearly states that "fumes" are regarded as a "pollutant." Second, when canisters of a liquid or other compound are brought onto a premises, opened, and the material, upon exposure to the air or after application to a surface, causes noxious fumes to emanate and make persons dizzy, the fumes are clearly pollutants.

*Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 451 Pa.Super. 136, 145, 678 A.2d 802, 806 (1996) (footnote omitted). Accordingly, the Superior Court remanded for the entry of summary judgment in favor of Harleysville.

contained in paint), *aff'd*, 61 F.3d 896 (3d Cir.1995); *Essex Ins. Co. v. Tri–Town Corp.*, 863 F.Supp. 38 (D.Mass.1994) (applying exclusion to inhalation of carbon monoxide from skating rink resurfacing machine); *American States Ins. Co. v. Nethery*, 79 F.3d 473 (5 [th] Cir.1996) (applying exclusion to exposure to fumes from painted surface).

The dissent faulted the majority for failing to appreciate that an insurer's obligation to defend its insured arises "whenever an injured party files a complaint which may potentially come within the coverage of the policy." *Id.* at 148, 678 A.2d at 808 (Del Sole, J., dissenting). According to Judge Del Sole, the underlying personal injury claim was not based upon Madison's use or release of noxious fumes, but upon Madison's negligence in failing to warn and protect others, failing to ventilate the area, and failing to cover the site into which the complainant fell. The pollution exclusion clause, he reasoned, did not bar coverage for such claims. Judge Del Sole also agreed with the trial court that the curing compound was a useful product and therefore, when used as intended, could not be considered a pollutant.

In the present appeal, Madison argues that the trial court correctly determined that the terms of the pollution exclusion clause are clear and unambiguous and do not apply to the situation at issue in this case. Under the clear and unambiguous language of the clause, Madison contends, the product that it brought to the work site, Euco Floor Coat, was not a pollutant, nor was there a release or discharge of the product. Alternatively, Madison argues that the pollution exclusion clause is ambiguous, as Judge Olszewski concluded, and therefore must be interpreted in Appellant's favor. As a second alternative, Appellant maintains that the dissenting *en banc* opinion was correct in finding that the claims asserted in the underlying action are based on acts of negligence such as failure to warn, not on the use or release of pollutants.[4]

While the Superior Court has had the opportunity to address various aspects of the pollution exclusion clause,[5] no

4. As they did in the Superior Court, BetzDearborn, Inc. (formerly Betz Laboratories, Inc.), a chemical manufacturer, has filed an *amicus curiae* brief in support of Madison, and the Insurance Environmental Litigation Association has filed an *amicus* brief in support of Harleysville.

5. *See Redevelopment Auth. of the City of Philadelphia v. Insurance Co. of N. Am.*, 450 Pa.Super. 256, 675 A.2d 1256 (1996) (interpreting "sudden"), *appeal denied*, 547 Pa. 730, 689 A.2d 235 (1997); *Gamble Farm Inn, Inc. v. Selective Ins. Co.*, 440 Pa.Super. 501, 656 A.2d 142 (1995)

appellate court of this Commonwealth has considered whether the exclusion precludes coverage for an injury arising from exposure to the fumes of a useful product such as Euco Floor Coat. Numerous other jurisdictions have addressed substantially similar issues, however, and the wide divergence of viewpoints among those jurisdictions is reflected in the opinions of the trial and appellate courts in this case. *See generally Construction and Application of Pollution Exclusion Clause in Liability Insurance Policy*, 39 A.L.R.4 [th] 1047 (1994 & Supp.). Indeed, it has been said that "one of the most hotly litigated insurance coverage questions of the late 1980's and early 1990's has been the scope and application of the pollution exclusion contained in the standard commercial general liability (CGL) policy." *Center for Creative Studies v. Aetna Life and Cas. Co.*, 871 F.Supp. 941, 943 (E.D.Mich.1994) (quoting Jeffrey W. Stempel, INTERPRETATION OF INSURANCE CONTRACTS: LAW AND STRATEGY FOR INSURERS AND POLICYHOLDERS 825 (1994)).

 Where an insurer relies on a policy exclusion as the basis for its denial of coverage and refusal to defend, the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such defense. *Erie Ins. Exch. v. Transamerica Ins. Co.*, 516 Pa. 574, 580, 533 A.2d 1363, 1366 (1987) (citing *Miller v. Boston Ins. Co.*, 420 Pa. 566, 570, 218 A.2d 275, 277 (1966)); *see also Armon v. Aetna Cas. & Surety Co.*, 369 Pa. 465, 469, 87 A.2d 302, 304 (1952). To determine whether Harleysville has met its burden of proof, we rely on well-settled principles of contract interpretation.

(interpreting "atmosphere"); *Antrim Mining, Inc. v. Pennsylvania Ins. Guar. Ass'n*, 436 Pa.Super. 522, 648 A.2d 532 (1994) (interpreting "own, rent or occupy"), *appeal denied*, 540 Pa. 616, 657 A.2d 487 (1995); *Graham v. Harleysville Ins. Co.*, 429 Pa.Super. 444, 632 A.2d 939 (1993) (finding that oil leaking from storage tank was a "contaminant"), *appeal denied*, 539 Pa. 651, 651 A.2d 539 (1994); *O'Brien Energy Systems, Inc. v. American Employers' Ins. Co.*, 427 Pa.Super. 456, 629 A.2d 957 (1993) (interpreting "sudden and accidental"), *appeal denied*, 537 Pa. 633, 642 A.2d 487 (1994); *Lower Paxton Township v. United States Fidelity and Guar. Co.*, 383 Pa.Super. 558, 557 A.2d 393 (interpreting "sudden"), *appeal denied*, 523 Pa. 649, 567 A.2d 653 (1989); *Techalloy Co., Inc. v. Reliance Ins. Co.*, 338 Pa.Super. 1, 487 A.2d 820 (1984) (interpreting "sudden and accidental").

[T]he task of interpreting [an insurance] contract is generally performed by a court rather than by a jury. The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language. *Gene & Harvey Builders v. Pennsylvania Mfrs. Ass'n,* 512 Pa. 420, 426, 517 A.2d 910, 913 (1986) (quoting *Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 304–05, 469 A.2d 563, 566 (1983)) (citations omitted). Contractual language is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Hutchison v. Sunbeam Coal Co.,* 513 Pa. 192, 201, 519 A.2d 385, 390 (1986). This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. *See Gamble Farm,* 440 Pa.Super. at 505, 656 A.2d at 144; *Techalloy,* 338 Pa.Super. at 7, 487 A.2d at 823. We will not, however, distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity. *Steuart v. McChesney,* 498 Pa. 45, 53, 444 A.2d 659, 663 (1982).

The polestar of our inquiry, therefore, is the language of the insurance policy. Inserting the policy's definition of the term "pollutant" into the body of the exclusion, we understand the exclusion to apply to "the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of . . . any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste[, . . . a]t or from any premises, site or location . . . occupied by . . . [the] insured[.]"

■ We determine first whether the policy's definition of "pollutant" applies unambiguously to the floor sealant or curing compound known as Euco Floor Coat. The pertinent inquiry is not, as Madison contends, whether the policy's

definition of "pollutant" is so broad that virtually any substance, including many useful and necessary products, could be said to come within its ambit. Rather, guided by the principle that ambiguity (or the lack thereof) is to be determined by reference to a particular set of facts, we focus on the specific product at issue.

Included in the record is the Material Safety Data report prepared by Euclid Chemical Company for the product or products known by the trade names Floor Coat, Super Floor Coat, Rez–Seal, Super Rez–Seal, Pilocure, Super Pilocure, and Eucocure. The report notes that "[t]hese products may contain approximately 3–4% Xylene . . .; 2–3% Cumene . . .; 40% Trimethylbenze [sic] . . ., which are considered toxic chemicals and 0.2 to 0.3% Styrene . . ., which is a suspected carcinogen." Xylene, cumene, and styrene have been classified as hazardous air pollutants by the federal government. 42 U.S.C. § 7412(b). In addition, the report states that the products' vapors may be irritating, that overexposure to such vapors "may cause CNS [central nervous system] effects, vertigo, muscular weakness, narcosis, confusion, [and] coma[,]" and that "[i]nhalation of dusts and vapors should be avoided." Under the heading "special protection information," the report cautions users of the products to wear eye protection, rubberized gloves, and protective clothing to prevent skin contact. As for ventilation, the report indicates that adequate fresh air is necessary and that "special precautions such as respiratory masks may be required in extreme cases."

Thus, the specific product at issue is not innocuous; its harmful effects are well known. According to the report supplied by its manufacturer, Euco Floor Coat or Eucocure is an irritant, and persons using the product should guard against inhaling or allowing the skin to come into direct contact with it. Indeed, as the Superior Court noted in this case, the fumes from the product "were so strong as to overcome a healthy adult, making him dizzy enough to fall into a trench. . . ." *Madison*, 451 Pa.Super. at 146, 678 A.2d at 807. The definition of pollutant in the Harleysville policy, including as it does "any . . . irritant," clearly and unambigu-

ously applies to the product in question. *See generally Brown v. American Motorists Ins. Co.*, 930 F.Supp. 207 (E.D.Pa.1996) (finding, largely on basis of Superior Court *en banc*'s decision in *Madison*, that fumes from chemical sealant applied to exterior of home were pollutants as defined in absolute pollution exclusion), *aff'd*, 111 F.3d 125, *cert. denied*, —— U.S. ——, 118 S.Ct. 369, 139 L.Ed.2d 287 (1997).

We find no merit in Madison's claim that the pollutant in this case consisted solely of the fumes released by the application of Euco Floor Coat to the cement, and that what Madison "brought on ... to the premises" within the meaning of subsection f(1)(d)(i) was not the pollutant (that is, the fumes themselves) but a non-polluting substance (Euco Floor Coat) in sealed containers. As Harleysville points out, while the form of the substance may have changed, its chemical composition did not. Given that fact, as well as the all-encompassing language of the definition, Madison avers a distinction without a difference.[6]

■ Having determined that the exclusion's definition of pollutant clearly and unambiguously encompasses the substance known as Euco Floor Coat, we consider whether the exclusion's requirement of an "actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants" is, with reference to the facts of the present case, similarly unambiguous.

■ The Harleysville policy does not define the terms in question. Words of common usage in an insurance policy are to be construed in their natural, plain, and ordinary sense, *Easton v. Washington County Ins. Co.*, 391 Pa. 28, 33, 137 A.2d 332, 335 (1957); *Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mut. Ins. Co.*, 385 Pa. 394, 397, 123 A.2d 413, 415 (1956), and we may inform our understanding of these terms by considering their dictionary definitions.

6. Moreover, Madison's argument ignores the preclusion of coverage under subsection f(1)(a), which addresses the release of pollutants "from any premises ... occupied by ... [the] insured" and which does not contain the "brought ... to the premises ... by [the] insured" requirement of f(1)(d)(i).

Webster's Ninth New Collegiate Dictionary (1990) defines "discharge" as, in pertinent part, "a flowing or issuing out." The same source defines "dispersal" as "the act or result of dispersing," especially "the process or result of the spreading of organisms from one place to another." "Seepage" is "the process of seeping," that is, "flow[ing] or pass[ing] slowly through fine pores or small openings." "Migration" is "move[ment] from one country, place, or locality to another" or "chang[ing] position in an organism or substance." A "release" is "the act or an instance of liberating or freeing (as from restraint)." Finally, an "escape" is "an act or instance of escaping: as ... flight from confinement ... [or] leakage or outflow[,] esp[.] of a fluid."

Common to all of these terms is, obviously, the element of movement. The listing of numerous similar terms such as "discharge" and "dispersal," preceded by the phrase "actual, alleged or threatened," indicates an intent to comprehend all such types and degrees of movement. When thus read, the exclusion applies to the incident at issue: a pollutant, Euco Floor Coat, was applied to the surface of the concrete utility trenches, and it dispersed into the air above and around the trenches (thus the need for the polyethylene envelope, so that the pollutant did not disperse even further).

The trial court found that there had been no discharge, dispersal, or similar movement of the Euco Floor Coat within the meaning of the policy because the vapors did not leave the enclosed area. Relying on the history of the pollution exclusion clause as set forth in *Tufco*, the trial court concluded that "the policy terms still require that the discharge be 'into the environment' in order for the pollutant exclusion to be triggered."

The trial court's approach does not comport with the settled principles of contract interpretation. In striving to discern the considerations underlying the policy language, the trial court failed to acknowledge and to apply the plain meaning of such language. If the pollution exclusion clause, by its express terms, does not require that a discharge or dispersal be "into the environment" or "into the atmosphere," then the

court is not at liberty to insert such a requirement in order to effect what it considers to be the true or correct meaning of the clause. The court's only aim, as noted earlier, must be "to ascertain the intent of the parties as manifested by the language of the written instrument...." [7] *Gene & Harvey,* 512 Pa. at 426, 517 A.2d at 913 (quoting *Standard Venetian Blind,* 503 Pa. at 305, 469 A.2d at 566) (emphasis added).

Moreover, as Harleysville points out, the pollution exclusion clause applies to any discharge, dispersal, or similar movement of a pollutant "[a]t or from any premises, site or location on which any insured ... [is] performing operations." If the exclusion spoke only of discharges *from* a work site, it could reasonably be argued that the words in question were environmental terms of art, applicable only to those instances in which a pollutant traveled beyond the work site and into the atmosphere, water, or ground. The plain language of the exclusion belies such limited applicability, however; by its very terms the exclusion encompasses discharges that do not leave the work site. Therefore, the exclusion is unambiguous, and it encompasses the discharge or dispersal of Euco Floor Coat at Madison's work site. *See generally Reliance Ins. Co. v. Moessner,* 121 F.3d 895 (3d Cir.1997) (finding that exclusion, by its terms, clearly and unambiguously barred coverage for claims based on carbon monoxide poisoning).

▆▆▆ In its final argument,[8] Madison asserts that the complaint in the underlying lawsuit states claims for acts of

7. The same principle precludes consideration of the public policy arguments advanced by Madison and its *amicus.* There is no claim of unconscionability before us. The question to be decided, therefore, is not whether the insurance industry should be allowed to issue commercial general liability policies containing the absolute pollution exclusion clause. That question is a matter for the legislature and the Insurance Commissioner of the Commonwealth. The pertinent question is, rather, whether such clause, contained in the contract of insurance entered into between Madison and Harleysville, by its terms operates to relieve Harleysville of its obligation to defend Madison in the underlying personal injury action. That is a matter for judicial resolution in accordance with accepted principles of contract interpretation.

8. In a footnote in its brief, Madison contends that the reasonable expectations of the insured must be considered, regardless of the express terms of the policy, and that the denial of coverage in the

alleged negligence, such as failure to warn, which do not arise out of Madison's use of Euco Floor Coat. Since the pollution exclusion clause applies only to bodily injury or property damage "arising out of" the discharge, dispersal, or similar movement of pollutants, Madison contends that Harleysville is required to defend it against such non-pollution-related claims.

■ An insurer's duty to defend is determined by the allegations in the underlying complaint. *General Accident Ins. Co. of Am. v. Allen,* 547 Pa. 693, 704, 692 A.2d 1089, 1094 (1997) (quoting *Wilson v. Maryland Cas. Co.,* 377 Pa. 588, 595, 105 A.2d 304, 307 (1954)); *Erie Ins. Exchange v. Claypoole,* 449 Pa.Super. 142, 156, 673 A.2d 348, 355 (1996) (*en banc*). Therefore, if the claims of negligence were truly independent of Madison's use of a pollutant, Madison's argument would have merit.

All of the plaintiff's claims of negligence, however, rest upon the fundamental averment that "while Mr. Ezzi attempted to set up an exhaust fan for the fumes emanating from the curing agent, he suddenly and without warning *was overcome by the fumes,* causing him to become dizzy and pass-out [sic]...." [9]

present case would violate its reasonable expectation of coverage. This contention, which would entail a substantial expansion of the reasonable expectations doctrine, heretofore applied in very limited circumstances, *see Collister v. Nationwide Life Ins. Co.,* 479 Pa. 579, 388 A.2d 1346 (1978) (applying doctrine to protect non-commercial insured from policy terms not readily apparent), *cert. denied,* 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1979); *Tonkovic v. State Farm Mut. Auto. Ins. Co.,* 513 Pa. 445, 521 A.2d 920 (1987) (applying doctrine to protect non-commercial insured from deception), was not included in Madison's summary of argument or in its petition for allowance of appeal. So minimal an argument on so important an issue does not warrant further review. *See Park v. Chronister,* 151 Pa.Cmwlth. 562, 577, 617 A.2d 863, 871 (1992) (arguments raised only in brief footnotes were too undeveloped for review), *appeal denied,* 534 Pa. 654, 627 A.2d 731 (1993); *see also In re Petition to Reapportion School Director Regions,* 688 A.2d 1275, 1281 n. 14 (Pa.Cmwlth.1997) (appellant's attempt to incorporate by reference arguments raised only by *amicus,* where appellant did not include issues in statement of questions presented or argue them in his brief, was ineffective to avoid waiver).

9. Ezzi asserts that Madison was negligent for failing to maintain the construction site in a safe and proper manner; failing to ventilate the work area so as to avoid a buildup of dangerous fumes; failing to warn Boeing employees by sign or barricade "of the dangerous condition that

Complaint at 4 (emphasis added). In other words, and regardless of the language chosen by the plaintiff, the plaintiff's injuries "arose out of" the release of the irritating fumes at the construction site. *See McCabe v. Old Republic Ins. Co.,* 425 Pa. 221, 224, 228 A.2d 901, 903 (1967) (phrase "arising out of," used in policy exclusion, was not ambiguous and indicated "but for" or "cause and result" relationship). The pollution exclusion clause therefore precluded coverage for those injuries.

The order of the Superior Court is affirmed.

Justice CAPPY files a dissenting opinion.

Justice NIGRO files a dissenting opinion.

Justice NEWMAN files a dissenting opinion.

CAPPY, Justice, dissenting.

I respectfully dissent. The term "arising out of" in the context of the absolute pollution exclusion is ambiguous, and therefore should be construed in favor of the insured. Moreover, I am concerned that the majority's "plain meaning" approach in interpreting the pollution exclusion establishes a dangerous precedent which will yield absurd results.

We have long-recognized that "[w]here the provision of the policy is ambiguous, the policy provision is construed in favor of the insured and against the insurer, the drafter of the instrument." *Bateman v. Motorists Mut. Ins. Co.,* 527 Pa. 241, 590 A.2d 281, 283 (1991). In construing the term "arising out of" in the context of the pollution exclusion, it is questionable whether the phrase requires merely a causal relationship

existed resulting from the application of the concrete curing agent"; failing to warn Boeing employees "of the likely effect of inhaling the noxious fumes that existed"; failing to provide Boeing employees "with protective gear to protect them from the fumes resulting from the application of the curing agent"; failing to provide adequate safeguards to prevent injury to Ezzi; disregarding the rights and safety of Ezzi and others in the construction area; failing to detect and observe "the dangerous condition caused by the application of [the] concrete curing agent"; and failing to barricade properly or plate the hole into which Ezzi fell. Complaint at 4–5.

(i.e., a "but for" relationship) or a proximate cause relationship. Arguably, the release of fumes was incidental to Mr. Ezzi's physical injuries, for he would not have suffered those injuries had the construction site been properly protected. Thus, construing the phrase "arising out of" strictly against the insurer so as to require a proximate cause relationship, I would hold that the pollution exclusion does not bar coverage in this instance.

Relying on *McCabe v. Old Republic Ins. Co.*, 425 Pa. 221, 228 A.2d 901, 903 (1967), the majority finds that Mr. Ezzi's injuries "arose out of the release of irritating fumes at the construction site." However, *McCabe* does not control the instant case, as there we were not construing the term "arising out of" in the context of a pollution exclusion. In fact, we recognized that the determining factor is "the context in which the words were employed." *Id.*

Mr. Ezzi set forth several claims sounding in negligence, including failure to warn and protect others. He has not alleged that his injuries resulted from the "actual, alleged or threatened discharge, dispersal, seepage, migration release or escape of pollutants." Where, as here, the claims sound in negligence, the pollution exclusion should not bar coverage. *See, e.g., Calvert Ins. Co. v. S & L Realty Corp.*, 926 F.Supp. 44, 47 (S.D.N.Y.1996) (building employee injured due to exposure to fumes during application of floor cement; complaint alleged, *inter alia*, failure to inspect and failure to remedy a dangerous condition which was initially created by the fumes; court concluded that "injuries complained of may reasonably be found to have arisen from improper ventilation or the failure to provide proper protective devices."); *Schumann v. State of New York*, 160 Misc.2d 802, 610 N.Y.S.2d 987, 989 (Ct.Cl.N.Y.1994) (contractor's worker injured by toxic fumes from cutting lead-paint-coated steel; worker alleged that he had not been provided with respiratory or other protective gear; court concluded that "the failure to provide claimant with an appropriate protective device gives rise to exposure-covered by the policy and not excluded by the pollution exclusion clause."); *Connor v. Farmer*, 382 So.2d 1069, 1070

(La.Ct.App.1980) (worker contracted silicosis; court "view[ed] the worker's injury in such a case as arising not from the discharge of sandblasting matter into the atmosphere but from the failure to provide the appropriate protective masks and other apparel. Liability (if any) for the injury arises not from polluting the atmosphere but from obliging others to work with inadequate protection in an atmosphere known to be polluted.... We do not construe the exclusion as applicable when the pollution is only one of two or more liability-imposing circumstances out of which the injury arises."). *But see League of Minn. Cities Ins. Trust v. City of Coon Rapids,* 446 N.W.2d 419 (Minn.Ct.App.1989) (injuries resulting from build-up of nitrogen dioxide from Zamboni machine fall within pollution exclusion, despite allegations that build-up was due to failure to maintain the Zamboni machine, to adequately ventilate and test the arena and to warn injured parties of the health dangers).

I am also concerned that the majority's strictly literal interpretation of the terms of the policy will yield results which were not intended by the parties to the insurance contract. As noted by the Court of Appeals for the Seventh Circuit:

> Without some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results. To take but two simple examples, reading the clause broadly would bar coverage for bodily injuries suffered by one who slips and falls on the spilled contents of a bottle of Drano, and for bodily injury caused by an allergic reaction to chlorine in a public pool. Although Drano and chlorine are both irritants or contaminants that cause, under certain conditions, bodily injury or property damage, one would not ordinarily characterize these events as pollution.

*Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.,* 976 F.2d 1037, 1043 (7 th Cir.1992).

I am persuaded by the reasoning of those cases which refuse to apply a literal interpretation of the pollution exclusion without regard to the circumstances of the alleged injury.

*See, e.g., American States Ins. Co. v. Koloms,* 177 Ill.2d 473, 227 Ill.Dec. 149, 687 N.E.2d 72, 79 (1997) ("[W]e agree with those courts which have restricted the exclusion's otherwise potentially limitless application to only those hazards traditionally associated with environmental pollution."); *Western Alliance Ins. Co. v. Gill,* 426 Mass. 115, 686 N.E.2d 997, 999 (1997) ("The exclusion should not reflexively be applied to accidents arising during the course of normal business activities simply because they involve a 'discharge, dispersal, release or escape' of an 'irritant or contaminant.' "), and cases cited therein. Accordingly, I conclude that the term "arising out of" in the context of this case is ambiguous and therefore, that the insurance contract at issue should be construed against the drafter, The Harleysville Mutual Insurance Company. Thus, I would reverse the holding of the Superior Court.

NIGRO, Justice, dissenting.

The Majority concludes that the pollution exclusion clause contained in the insurance policy issued to Madison relieves Harleysville of its obligation to defend Madison against Ezzi's personal injury action. Since I believe that the specific claims for relief pled by Ezzi in his personal injury action against Madison do not trigger the application of the pollution exclusion clause at issue, I must respectfully dissent.

As the Majority notes, the general liability insurance policy issued to Madison by Harleysville expressly excluded from its coverage any claims for compensation for bodily injury or property damage "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants...." However, Ezzi's complaint against Madison does not allege that his injuries arose out of the dispersal of pollutants at the work site. Rather, Ezzi's complaint alleges that his injuries were caused by Madison's failure to warn and protect others from the hazardous situation, to properly ventilate the work site, and to cover the hole where he fell. (Complaint at 4–5.)

"[I]t is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend." *Springfield Township v. Indemnity Ins. Co. of North America*, 361 Pa. 461, 464, 64 A.2d 761, 762 (1949). In addition, in determining whether an insurer has a duty to defend, the averments contained in the underlying complaint must be "liberally construed with all doubts as to whether the claims may fall within the policy coverage to be resolved in favor of the insured." *Roman Mosaic and Tile Co. v. Aetna Cas. and Sur. Co.*, 704 A.2d 665, 669 (Pa.Super.1997)(citing *Cadwallader v. New Amsterdam Cas. Co.*, 396 Pa. 582, 152 A.2d 484 (1959)). Given the fact that the negligence claims raised by Ezzi in his complaint against Madison are not premised upon Madison's dispersal of the fumes emanating from the curing agent, and construing the averments contained within the four corners of the complaint liberally in favor of Madison as the insured, I believe that the pollution exclusion is not applicable, and that Harleysville is obligated to defend Madison against the claims raised by Ezzi. Accordingly, I respectfully dissent.[1]

1. A contrary result is not dictated by the Court's recent decision in *Mutual Benefit Ins. Co. v. Haver*, 555 Pa. 534, 725 A.2d 743, 1999 WL 112358 (Pa.). In *Haver*, a pharmacist obtained an insurance policy which expressly excluded coverage for bodily injuries which are a consequence of "knowing endangerment" by the pharmacist. The pharmacist was later sued by a husband and wife who sought to recover for injuries that they allegedly sustained because the pharmacist improperly dispensed various prescription drugs to the wife without any prescriptions. The pharmacist's insurance carrier refused to defend against the lawsuit, contending that the pharmacist's actions triggered the "knowing endangerment" exclusion contained within his insurance policy. The lower courts disagreed, and found that the insurance carrier had a duty to defend the pharmacist, because the claims raised by the plaintiffs in their complaint did not allege "knowing endangerment" by the pharmacist, but only negligence on his part. This Court reversed, finding that despite the fact that the plaintiffs' complaint was based on negligence theory, the factual allegations contained within the complaint constituted "knowing endangerment" as a matter of law. Underlying the Court's decision in *Haver* was its concern that a contrary result would encourage plaintiffs to frame their requests for redress in order to avoid exclusions in liability insurance policies despite the fact that the harms that they allege fall clearly within those same policy exclusions. Conversely, the claims leveled by Ezzi against Madison are in complete accord with the facts that he

NEWMAN, Justice, dissenting.

I respectfully dissent because I do not believe that the trial court developed a sufficient record upon which to determine the applicability of the pollution exclusion to the allegations set forth in Mr. Ezzi's Complaint. I am concerned that the trial court determined that Euco Floor Coat is not a pollutant without addressing the critical issue of the exact chemical composition of the product used at the Boeing/Vertol Helicopters facility and whether the fumes emitted from that product are a pollutant. As the Majority notes:

> Included in the record is the Material Safety Data report prepared by Euclid Chemical Company for the product or products known by the trade names Floor Coat, Super Floor Coat, Rez–Seal, Pilocure, Super Pilocure and Euco-care. The report notes that '[t]hese products **may** contain approximately 3–4% Xylene ..., 2–3% Cumene ... 40% Trimethylbenze [sic] ... which are considered toxic chemicals, and 0.2 to 0.3 Styrene ..., which is a suspected carcinogen.'

Majority Opinion at 107 (emphasis added). Without a factual determination of the composition of the specific product at issue, I do not believe that the trial court could have reliably held that either the product or its fumes are pollutants. Accordingly, the grant of summary judgment in favor of Madison Construction based upon the physical properties of Euco Floor Coat is inappropriate. Therefore, I would vacate the Orders of the Superior Court and trial court, and remand with instructions to consider the issues set forth in this Opinion.

alleges in his complaint. Ezzi alleges that his injuries arose out of Madison's negligent conduct, and the Majority has not, and can not contend that his claims for relief were merely contrived in an attempt to avoid the application of the pollution exclusion clause at issue.