**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2680
_____

DAVID DOUGHERTY,
Appellant

v.

ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-14-cv-07270)
District Judge: Honorable Thomas O'Neill, Jr.

_____

Submitted under Third Circuit LAR 34.1(a)
on Monday, October 24, 2016

Before:  VANASKIE, KRAUSE, and NYGAARD, *Circuit Judges*

(Filed: March 6, 2017)

_____

OPINION[*]

_____

KRAUSE, *Circuit Judge*.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Appellant David Dougherty challenges the District Court's grant of summary judgment in favor of his insurance company on his claims for breach of contract and bad faith claims handling. For the reasons that follow, we will affirm.

## I. Background

Dougherty owns a home in Glenolden, Pennsylvania that suffered extensive damage when water escaped from the home's plumbing system. Dougherty maintained an insurance policy for this home with Appellee, Allstate Property and Casualty Insurance Company, and sought coverage for the water damage under the policy. Allstate denied Dougherty's claim, invoking the policy's "maintenance exclusion."[1] This exclusion provided in pertinent part that Allstate would not "cover loss to the property . . . consisting of or caused by . . . [p]lanning, [c]onstruction or [m]aintenance, meaning faulty, inadequate or defective . . . maintenance." Dougherty filed a two-count complaint, alleging that Allstate both breached the terms of his insurance contract and denied him insurance benefits in bad faith when it refused to cover the damage to his home. The District Court granted summary judgment to Allstate, concluding that Dougherty had not raised a genuine issue of material fact as to whether Allstate properly applied the maintenance exclusion in light of extensive evidence that the water discharge was caused by Dougherty's failure to maintain his furnace. *See Dougherty v. Allstate Prop. & Cas. Ins. Co.*, 185 F. Supp. 3d 585, 598 (E.D. Pa. 2016). This appeal followed.

---

[1] Allstate also denied Dougherty's claim on the basis of a separate "occupancy/heat exclusion." Appellee's Br. 14. The District Court did not address this additional exclusion, and we decline to do so here.

2

## II.  Discussion[2]

We review the District Court's grant of summary judgment de novo, and will affirm if "there is no genuine issue of material fact" and if, viewing the facts in the light most favorable to Dougherty, Allstate is "entitled to judgment as a matter of law." *Fed. Home Loan Mortg. Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 443 (3d Cir. 2003).

### A.  Breach of Contract[3]

Dougherty argues that there are disputes of material fact remaining for trial on his breach of contract claim because Allstate has not demonstrated that his dysfunctional furnace was the cause of the water leak and, even if it has, there are multiple explanations in the record as to what may have caused the furnace to stop working.  We disagree, and affirm the District Court's grant of summary judgment in Allstate's favor.

Because Allstate invoked an exclusion as the basis for denying Dougherty's claim, it bears the burden of proving the exclusion applies.  *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).  Dougherty asserts that Allstate has not met this burden, relying on Allstate's admission that, despite denying coverage on the ground that Dougherty's unmaintained furnace caused a pipe to freeze, it never investigated the bathroom where the leak originated to locate the defective pipe.  Dougherty makes much of evidence that a restoration company reported to Allstate that there were "no visible

---

[2] The District Court had diversity jurisdiction over Dougherty's state law claims pursuant to 28 U.S.C. § 1332.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

[3] The parties agree that Pennsylvania law applies to Dougherty's breach of contract claim.

3

broken pipes," on the floor where the leak originated, App. 795, and urges that Allstate's failure to investigate further creates a factual dispute as to the source of the water.

Viewing the record as a whole, we agree with the District Court that there is "ample evidence" that "the incident can be attributed to [Dougherty's] failure to sufficiently maintain the furnace." *Dougherty*, 185 F. Supp. 3d at 597. First, there is overwhelming evidence that Dougherty's lack of maintenance caused his furnace to malfunction. Allstate's expert engineer concluded that the furnace was in dire need of service, and ultimately failed when essential parts became clogged with debris and soot. These findings were corroborated by a label on the furnace reflecting that it had last been serviced seven years earlier,[4] and Dougherty's admission that he had been living in Colorado for the previous five years and did not know if the furnace had been serviced during that time.

Following his investigation, Allstate's expert felt comfortable concluding "to a reasonable degree of engineering certainty" that the leak was "attributable to an accidental malfunction of the furnace caused by a clogging of the oil supply system" and "[t]he incident would not have occurred if the owner had not failed to maintain the furnace in [a] reasonably timely manner." App. 329. Dougherty's expert also examined the furnace and, while he chose not to address the ultimate cause of the leak, he likewise

---

[4] Allstate's expert report states that an oil-fired furnace "should be routinely serviced every year" and that a failure to service for seven years would reflect a "gross lack of proper diligence on the part of the owner." App. 329.

4

concluded that "[the] furnace failed due to a clogged oil nozzle and clogged oil filter." App. 306.

Second, the record reflects that the house had reached freezing temperatures around the time of the leak. Dougherty's property manager testified at his deposition that when he went to check the damage, it was cold enough outside that "anything that was wet just froze" and "everything [in the house] was frozen" with "sheets of ice on the wall" and "carpets . . . frozen solid." App. 598. This is also consistent with a letter Dougherty received from a realtor in April 2013 warning him of the potential of freezing pipes if he did not "winterize" his unoccupied property. App. 259. Dougherty not only failed to "winterize" his home; he allowed his heating system to deteriorate leading up to this incident in January 2014.[5]

Lastly, Dougherty has acknowledged on multiple occasions, both prior to and during this litigation, that the leak was caused by freezing pipes. When Dougherty first reported the loss to Allstate, he submitted a copy of his contract with a public adjuster, which identified the loss as a result of "water-freeze." App. 216. Next, in his Rule 26(f) statement at the commencement of this case, Dougherty stated that "an accidental failure of his heating system caused a water pipe in the second floor bathroom of his home to freeze and burst." App. 990. Most recently in his deposition, Dougherty admitted that,

---

[5] In his brief, Dougherty repeatedly asserts that the furnace was working and the house was at a temperature of forty-eight to fifty degrees one week prior to the discovery of the damage. That assertion, however, has little bearing on whether pipes began to freeze once the furnace became clogged and temperatures dropped below freezing in the days that followed.

although "it's never been determined . . . for a fact," he does not "dispute that it was water freeze." App. 556.

Dougherty now attempts to reverse course and dispute the evidence and his prior admissions[6] by arguing the possibility that the leak occurred before the furnace malfunctioned and thus was attributable to some other cause. Specifically, he points to evidence that the operating controls of the furnace were found to have suffered water damage and postulates that the leak may have caused the furnace malfunction—not the other way around. Such sheer speculation, however, does not create a factual dispute as to the cause of the furnace malfunction, *see Halsey v. Pfeiffer*, 750 F.3d 273, 301 (3d Cir. 2014), particularly in the face of overwhelming evidence to the contrary. Indeed, even Dougherty's expert who identified the damage to the controls acknowledged that it was "most likely caused by water from the broken pipe." App. 308.

In sum, Allstate's failure to identify the pipe that caused the leak does not create a factual dispute that would render summary judgment inappropriate. Even drawing all reasonable inferences in Dougherty's favor, the record does not support any conclusion other than that Dougherty's failure to maintain the furnace caused it to malfunction, and

---

[6] In his reply brief, Dougherty argues that statements made during this litigation are not relevant because they were not available to Allstate at the time it made its coverage determination. Regardless of whether they factored into Allstate's coverage decision at the time, Dougherty's additional admissions as to the cause of the leak are relevant to the question of whether Allstate had any obligation to provide him with coverage for the damage to his home. In addition to their independent probative value, these admissions also bolster the deposition testimony of Allstate's claims adjuster, who asserted that Allstate did not attempt to identify the pipe that caused the damage because "there was never a question" that freezing pipes were the source of the leak. App. 952.

that malfunction in the middle of winter caused his water pipes to freeze and leak. Dougherty himself at times appears to concede as much, and, to the extent he contends otherwise, he has not offered more than a "mere scintilla of evidence" to rebut Allstate's credible showing that the maintenance exclusion barred coverage for his claim.[7] *Williams v. Borough of W. Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989).

Dougherty also raises an alternative argument, contending that even if the clogged furnace was the cause of the flooding, the maintenance exclusion does not apply to his claim because furnaces are "fixtures" rather than "property" under Pennsylvania property law. Appellant's Br. 20-22. Thus, because the exclusion only applies to a failure to maintain "property," he asserts his failure to maintain his furnace falls outside the scope of exclusion.

We reject this strained interpretation of the insurance policy. Under Pennsylvania law, the language of an insurance policy "must be construed in its plain and ordinary sense" and to "effectuate the intent of the parties as manifested by the language of the specific policy." *Pa. Nat. Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 14 (Pa. 2014). This is a contract dispute, not a property one, and Dougherty gives no explanation why we

---

[7] Dougherty takes issue with the District Court's consideration of a number of emails between him and his public adjuster that the District Court found relevant because they "provide insight into [Dougherty's] efforts to maintain his property and also into whether he provided sufficient information to [Allstate] to permit it to perform the required investigation of his claim." *Dougherty*, 185 F. Supp. 3d at 590 n.5. We find there is sufficient evidence that Dougherty did not properly maintain his property irrespective of these emails, but see no abuse of discretion in the District Court's consideration of them.

7

should conclude the parties intended to use the word "property" as a legal term of art, much less one that exempts an insured's failure to maintain his home's temperature regulation system, a potential source of significant damage, from an exclusion specifically designed to protect the insurer against damage caused by the insured's negligence. As the District Court correctly noted, the "plain and ordinary" meaning of the term "property" in a contract is far broader and undoubtedly encapsulates fixtures, as it covers "[a]ny external thing over which the rights of possession, use, and enjoyment are exercised." *Dougherty*, 185 F. Supp. 3d at 596 n.13 (quoting *Property*, Black's Law Dictionary (10th ed. 2014)). We agree with that "common sense interpretation." *Universal Teleservices Ariz., LLC v. Zurich Am. Ins. Co.*, 879 A.2d 230, 233 (Pa. Super. Ct. 2005).

### B. Bad Faith

To prevail on his bad faith claim under 42 Pa. Cons. Stat. § 8371, Dougherty must demonstrate by clear and convincing evidence that (1) Allstate lacked a reasonable basis for denying coverage; and (2) Allstate knew or recklessly disregarded its lack of a reasonable basis. *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997). Because we conclude that the maintenance exclusion was properly applied, Allstate by definition had a reasonable basis to deny Dougherty's claim. *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999). Even if viewed as a distinct claim that requires us to consider only the facts Allstate knew at the time of the coverage determination to evaluate its subjective intent, the experts' reports detailing the condition of Dougherty's furnace coupled with the frozen condition of the home,

8

Dougherty's failure to "winterize" his home, and Dougherty's characterization of the incident as a "water-freeze" to his public adjuster provided more than a reasonable basis for Allstate to deny coverage.

**III.    Conclusion**

For the foregoing reasons, we will affirm the judgment of the District Court.