## Municipal Authority of the Town of Bloomsburg v. Pennsylvania Pooled Risk Insurance for Municipal Entities

*Gary E. Norton,* for plaintiff.
*Brian P. Gabriel,* for the defendant.

JAMES, *J.,* May 19, 2005—Plaintiff Municipal Authority of the Town of Bloomsburg operates the town's sewage disposal system. Defendant "Penn Prime Trust" is plaintiff's insurer under a liability insurance policy. On July 30, 2004, plaintiff filed a complaint against defendant seeking declaratory judgment. In particular, plaintiff seeks an order directing that defendant provide plaintiff with defense coverage (attorney's fees) for two actions. One action was brought by the Pennsylvania Department of Environmental Protection (DEP) through its order of October 31, 2001. The second claim was a related federal lawsuit brought by Paul Cunningham and Anna Cunningham, individually and as guardians of Scott Cunningham, and Clayton Hulsizer III, filed February 12, 2003.

This matter is before this court to consider both plaintiff's motion for summary judgment and defendant's motion for summary judgment. The issue in each summary judgment motion is whether or not the "pollution" exclusion to coverage under the terms of the insurance policy abrogates defendant's duty to provide a defense to the DEP claim and to the Cunningham claim under the facts of this case. A relevant sub-issue is whether other provisions of the policy also specifically exclude the DEP's claim from coverage.

## RELEVANT FACTS

In March 2001, the Cunninghams detected odors at their home on Cherry St., Bloomsburg, Pennsylvania. DEP conducted an investigation and issued an order dated July 31, 2001, directing plaintiff to cease directly accepting industrial wastewater from Milco, a local industry. The order also directed plaintiff to "submit a written plan and schedule for the replacement and/or repair of any remaining compromised sanitary sewer lines that convey industrial wastewater from the Milco facility to the STP [sewage treatment plant]." Said order was pursuant to the Air Pollution Control Act (35 P.S. §4001 et seq.) and the Clean Streams Law (35 P.S. §691.1 et seq.). DEP alleged that certain chemicals were escaping plaintiff's pipes and that the "source of the majority of contaminants detected in air samples" is the "effluent originating from the Milco facility." DEP said, "[t]he effluent appears to leave the Milco facility warm and begin offgassing vapors as it streams through the sewer system. The vapors escape the sewer through the cracks

and disjointed pipes located near the affected residence and enter the slag."

Plaintiff appealed DEP's order. The parties settled the matter by stipulation. It was agreed that plaintiff and Milco had complied with DEP's orders relative to the discharge and acceptance "of industrial wastewater from the Milco facility into the authority's sanitary sewer system."

Plaintiff acknowledged that the pipes had been cracked. They were repaired.

On February 12, 2003, the Cunninghams filed a complaint in federal court against plaintiff and Milco. In their "factual allegations" in the complaint, the Cunninghams allege the following:

"(8) Prior to March 2001, and thereafter, the defendant, Milco Industries Inc., knew or should have known that it was discharging dangerous wastewater, residual chemical waste and effluent which contained hazardous substances from its facility into the public sewer system operated by the co-defendant, Bloomsburg Municipal Authority, upstream from the residence of the plaintiffs.

"(9) Prior to March 2001, and thereafter, the sanitary sewers owned and maintained by the defendant, Municipal Authority of the Town of Bloomsburg, transported said wastewater, effluent, residual chemical waste and hazardous substances to a treatment facility via a piping system through and near defendant's property.

"(10) The sanitary sewer system operated and maintained by the defendant, Municipal Authority, was in poor condition and allowed leakage of the wastewater, efflu-

ent vapors, residual chemical waste and hazardous substances into the ground around the plaintiffs' properties, causing fumes, wastewater, and odors to seep into their property, causing permanent contamination of their real property.

"(11) The defendant, Milco Industries Inc., never obtained a permit for discharge of this wastewater, effluent, residual chemical waste and hazardous substances as required by the Solid Waste Management Act and the Federal Regulations.

"(12) As a result of the combination of the poor sanitary sewers and the discharge of dangerous residual chemical waste, hazardous substances and effluent from the Milco facility, the plaintiffs' properties became permanently contaminated. Those chemicals included, but are not limited to, benzene, chloroform, toluene, trimethylebenzene, chlorotoluene and other chemicals, some of which are carcinogens.

"(13) The discharge of said effluent, wastewater, residual chemical waste and hazardous substances causes rashes, headaches, respiratory infections, and other health problems which will result in future medical monitoring of the plaintiffs.

"(16) As a direct result of the contamination of plaintiffs' property, they have been forced to evacuate their homes and to incur various expenses for the cleanup and response costs.

"(17) The plaintiffs have expended various sums of monies in attempting to resolve the toxic waste pollution caused by the defendants and are seeking reimbursement for same."

Subsequently, the Federal District Court dismissed the Cunninghams' claims against plaintiff and Milco.[1]

## STANDARD OF REVIEW

"Ordinary summary judgment procedures are applicable to declaratory judgment actions." *Keystone Aerial Surveys Inc. v. Pennsylvania Property & Casualty Insurance Guaranty Association,* 777 A.2d 84, 88 (Pa. Super. 2001). Summary judgment is properly granted in either of two circumstances: "(1) whenever there is no genuine issue of material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or (2) if, after the completion of discovery relative to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2.

## APPLICABLE LAW

"It has long been the law in Pennsylvania that the *nature* of the allegations contained in a complaint control whether an insurer must defend a policyholder." *Roman Mosaic & Tile Co. v. Aetna Casualty & Surety Co.,* 704 A.2d 665, 668 (Pa. Super. 1997). (emphasis in original) In other words, "[i]t is not the actual details of the injury,

---

1. Defendant also asserts that it was not given proper notice of the DEP and Cunningham claims. This court finds that notice was properly given early in the proceedings, on March 3, 2001, and March 26, 2001, and on several subsequent occasions.

but the nature of the claim which determines whether the insurer is required to defend." *Springfield Twp. v. Indemnity Insurance Co. of North America,* 361 Pa. 461, 464, 64 A.2d 761, 762 (1949).

The Pennsylvania Superior Court recently outlined the appropriate analysis for determining whether an insurer has a duty to defend its insured:

"[The court] must compare the allegations in the complaint with the provisions of the insurance contract and determine whether, if the complaint allegations are proven, the insurer would have a duty to indemnify the insured. . . . In the event that the complaint alleges a cause of action which may fall within the coverage of the policy, the insurer is obligated to defend. . . . In making this determination, the factual allegations of the complaint are taken to be true and the complaint is to be liberally construed with all doubts as to whether the claims may fall within the coverage of the policy to be resolved in favor of the insured." *Unionamerica Insurance Co. Ltd. v. J.B. Johnson,* 806 A.2d 431, 433-34 (Pa. Super. 2002). (internal citations omitted) *Mark I Restoration SVC v. Assurance Company of America,* 248 F. Supp.2d 397, 399-400 (2003). Thus, it is the complaint itself and the allegation contained in the complaint that we need to examine to determine if there is a duty to defend.

In addition, the analysis of the complaint must be done in light of contract analysis and interpretation. In other words, the court must analyze the insurance contract in light of the allegations in the complaint to determine if there is a duty to defend. The process to analyze a pollution exclusion in an insurance contract is set forth in detail in the Pennsylvania Supreme Court case of *Madison*

*Construction Company v. Harleysville Mutual Insurance Company,* 557 Pa. 595, 735 A.2d 100 (1999). *Madison* has been summarized and followed in subsequent cases. "Recently, this court summarized many principles relating to the proper interpretation of pollution exclusions, as follows:

"Interpretation of an insurance contract is a matter of law. See *Madison Const. Co. v. Harleysville Mut. Ins. Co.,* 557 Pa. 595, 606, 735 A.2d 100, 106 (1999). Our standard of review, therefore, is plenary. *Young v. Equitable Life Assurance Society of the United States,* 350 Pa. Super. 247, 504 A.2d 339, 341 (1986). Where, as in this case, 'an insurer relies on a pollution exclusion as the basis for its denial of coverage and refusal to defend, the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such defense.' *Madison,* 557 Pa. at 605, 735 A.2d at 106.

"In interpreting the language of a policy, the goal is 'to ascertain the intent of the parties as manifested by the language of the written instrument.' See *Madison,* 557 Pa. at 606, 735 A.2d at 106. Indeed, our Supreme Court has instructed the 'polestar of our inquiry . . . is the language of the insurance policy.' *Id.*

"When construing a policy, 'words of common usage . . . are to be construed in their natural, plain and ordinary sense . . . and we may inform our understanding of these terms by considering their dictionary definitions' and where 'the language of the [policy] is clear and unambiguous, a court is required to give effect to that language,' 557 Pa. at 606-608, 735 A.2d at 106-108. (citations omitted) However, 'where a provision of a policy is ambiguous, the policy provision is to be construed in

favor of the insured and against the insurer, the drafter of the agreement.' *Id.* Thus, while a court will not 'distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity,' it must find that 'contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts.' *Id.*

"Under *Madison,* we must determine whether the specific substance at issue is a pollutant within the meaning of the particular insurance contract. *Id.,* 735 A.2d at 107. The Supreme Court directed that:

"The pertinent inquiry is not . . . whether the policy's definition of 'pollutant' is so broad that virtually any substance, including many useful and necessary products, could be said to come within its ambit. Rather, guided by the principle that ambiguity (or the lack thereof) is to be determined by reference to a particular set of facts, we focus on the specific product at issue.

"*Id.* Moreover, when the question is one of contract interpretation, public policy arguments are irrelevant. 557 Pa. at 611 n.8, 735 A.2d at 108 n.8.

"Finally, under *Madison,* we must determine whether the requisite causation has been demonstrated. 557 Pa. at 610-13, 735 A.2d at 109-10. Absent causation between the alleged pollutant and the injury, the claim would be outside of a pollution exclusion clause. *Id.*" *Municipality of Mt. Lebanon v. Reliance Insurance Co.,* 778 A.2d 1228, 1231-32 (Pa. Super. 2001).

In summary, this court must first determine what the precise liability allegations are from the complaint, and then determine from the insurance contract whether these

allegations are excluded from coverage. In this case, in order to decide whether the pollution exclusion negates coverage, this court must determine whether, from the record and applicable law, the pollutants are "toxins" that can and allegedly did cause damages.

## DISCUSSION

The DEP order consistently alleged liability based on alleged chemical emissions from plaintiff's sewer system. "Six of the chemicals are carcinogens, and the majority are listed as skin/eye/respiratory irritants following acute exposure to vapors." (DEP order of July 31, 2001, paragraph X.) In the DEP order, there are no independent allegations of negligence or liability except for the discharge of these pollutants.

Likewise, in their complaint, the Cunninghams allege liability based on chemicals escaping from plaintiff's leaking sewer system. They specifically say:

"(12) As a result of the combination of the poor sanitary sewers and the discharge of dangerous residual chemical waste, hazardous substances and effluent from the Milco facility, the plaintiffs' properties became permanently contaminated. Those chemicals included, but are not limited to, benzene, chloroform, toluene, trimethylebenzene, chlorotoluene and other chemicals, some of which are carcinogens."

DEP's order and the Cunninghams' complaint limit their liability allegations to the discharge of chemicals. Thus, we must analyze the insurance policy to determine whether such allegations impose a duty upon defendant to defend the claim and suit.

The policy in question contains the following provisions:

"(IX) General exclusions applicable to all coverages, *i.e.,* [t]hese coverage provisions do not apply to:

"(B) Claims or suits arising in whole or in part out of the actual, alleged or threatened discharge, dispersal, seepage, release, migration or escape of *pollutants;* . . .

"Section IX General Exclusions Applicable To All Coverages, exclusion B does not apply to bodily injury or property damage to a building or its contents caused by actual exposure to sewage resulting from (i) the reverse flow of such sewage from within any sewage facility that you own, operate or maintain; or (ii) *the escape of sewage from any fixed conduit that you own, operate or maintain,* but only if the escape occurs away from the land you own or lease. This exception to the pollution exclusion does not apply to the following:

"(4) Bodily injury or property damage resulting from any radioactive or toxic material in such sewage." (emphasis provided)

In summary, under the terms of the insurance policy, claims or suits arising in whole or in part from the discharge or escape of pollutants are excluded from coverage unless the escape or discharge is from a "fixed conduit" (broken pipe in this case). However, there is no coverage if the damage results from "toxic material in such sewage." In this case, the controlling question is whether the alleged chemicals are toxic. The defendant insurance company had the burden of proof. "Where an insurer relies on a policy exclusion as the basis for its denial of coverage and refusal to defend, the insurer has

asserted an affirmative defense and, accordingly, bears the burden of proving such defense." *Madison, supra,* 557 Pa. at 605, 735 A.2d at 106.

By the terms of the definition in the policy, pollutants include "chemicals." "Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

The next question is whether the chemicals (*i.e.,* pollutants) are toxic. Black's Law Dictionary (Seventh ed. 1999) defines "toxic" as "having the character or producing the effects of a poison: produced by or resulting from a poison; poisonous." Benzene, chloroform and toluene are designated as "toxic pollutants" by the federal government. 40 C.F.R. §401.15. Based on the undisputed record (DEP order of July 31, 2001, paragraph X), six of the 12 chemicals found at the Cunninghams' property "are carcinogens," and the "majority are listed as skin/eye/respiratory irritants following acute exposure to vapors." According to a DEP report of May 21, 2001:

"The results of this evaluation indicate that immediate detrimental health effects may be experienced by the residents of 815 Cherry Street due to exposure to the chemical vapors detected in their home. The majority of chemicals exceeded their health-based criteria (*i.e.,* RBCs) are listed as skin/eye/respiratory irritants following acute exposure to vapors. In addition, six of the above-listed chemicals are considered carcinogens. Based on these results, the residents should not occupy this residence until the source of vapors can be identified and mitigated. Additional monitoring following mitigation

of the source of vapors should be conducted prior to re-occupying the home to confirm that concentrations of these chemicals have been reduced to safe levels."

Indisputably, these chemicals are poisonous and harmful, *i.e.,* toxic. This court finds that the chemicals alleged in the DEP order and in the Cunningham complaint are toxic within the terms of the insurance contract and the pollutant exclusion. There is no ambiguity.

The final question in this analysis, then, is whether the alleged toxins allegedly caused the damages complained of, thus making the pollution exclusion applicable. The complaint itself alleges causation in paragraphs 13 through 17, asserting that the toxic chemicals caused physical damage, property damage, and economic damage. The alleged cause of these damages by the alleged chemicals is consistent with the chemicals' federal designation as "toxic pollutants" and with DEP's expert's opinion that these chemicals are carcinogens and causes of skin/eye/respiratory irritation following acute exposure to their vapors. This court finds that the chemicals alleged in the complaint are toxic and can cause the damages alleged. The pollution exclusion applies and the defendant has no duty to provide plaintiff with a defense to the DEP action and the Cunningham suit.

However, plaintiff suggests that the Cunninghams and DEP alleged other grounds for recovery based on negligence. Specifically, they suggest that plaintiff was independently negligent for maintaining and using a "poor" sanitary sewer system, *i.e.,* one with broken and cracked pipes. However, additional claims of negligence must be "independent" of liability based on the toxic pollutant. See *Madison, supra,* 557 Pa. at 611, 735 A.2d at

109. The broken pipes were not independent of the pollutant's escape and discharge. They were an integral and "inescapable" part of the alleged liability. The complaint itself says that the "combination" of the broken pipe and chemicals caused the damages. Moreover, the insurance contract itself provided that the pollutant exclusion applies to "claims or suits *arising in whole or in part*" (emphasis provided) from the escape or discharge of pollutants. The broken and cracked pipes are part of the alleged liability based on the escape and discharge of toxic pollutants and do not give rise to a separate and independent theory of recovery.

The Cunninghams' complaint and the DEP order are claims and/or suits for liability arising from the escape and/or discharge of toxic pollutants which can and allegedly did cause damage. The insurance contract's pollution exclusion applies. Defendant has no duty to defend the DEP claim and the suit by the Cunninghams.[2]

### ORDER

And now, May 19, 2005, plaintiff's summary judgment motion is denied. Defendant's summary judgment motion is granted. The pollution exclusion in the insurance contract applies. Defendant has no duty to defend the DEP claim and the Cunningham suit against plaintiff.

---

2. As a result of this decision, the issue of whether or not other insurance policy exclusions negate defendant's duty to defend against the DEP claim is moot.