# Ford City Borough Municipal Sewage Disposal Authority v. EMC Insurance Companies

*James J. Panchik,* for plaintiff.
*Stephen J. Poljak,* for defendants.

NICKLEACH, *P.J.,* May 20, 2005—This case is an insurance coverage dispute between the Ford City Borough Municipal Sewage Disposal Authority and its in-

surer, EMCASCO Insurance Company, a division of EMC Insurance Companies, (collectively EMC), over a property damage claim resulting from the accidental discharge of chlorine gas at the Sewage Authority's treatment plant in September 2002. Before the court for disposition is EMC's motion for summary judgment.

## STATEMENT OF THE FACTS

The Sewage Authority owns and operates a sewage treatment plant within the Borough of Ford City, Pennsylvania. The Sewage Authority is in the business of processing raw sewage, treating it, and disposing of the treated sewage. Complaint, paragraph 6. One aspect of the sewage treatment process involves chlorination of the sewage at various stages. *Id.*

"On or about September 28, 2002, a component of the [plant's] chlorine distribution system, a chlorine yoke which regulates the discharge of chlorine, failed resulting in the discharge of chlorine into the plant and surrounding areas. The yoke *developed a hole allowing* the chlorine to *leak* out." Complaint, para. 8. (emphasis added)

"The product failure resulting in the *discharge* of the chlorine *caused damage* to the sewage treatment plant and property within the sewage treatment plant *through a chemical reaction resulting in corrosion and rust.* The damage caused by the failure is ongoing as the chlorine is bleeding through the various metals. Equipment, tools and various items of personalty were destroyed by the incident." *Id.* at para. 9. (emphasis added) At the time the complaint was filed, the property damage totaled $65,213.89. *Id.*

EMC had issued a commercial property insurance policy numbered ***-**-** to the Sewage Authority, which policy was in effect from January 1, 2002 through January 1, 2003. See policy, exhibit A of complaint. On October 1, 2002, the Sewage Authority filed a claim under the policy asking to be compensated for property damage caused by the chlorine leak. *Id.* at para. 12.

On November 8, 2002, EMC issued a reservation of rights letter, stating that, because of various exclusions, it did not believe the property damage was covered under the policy. In its reservation of rights letter, EMC said:

"Mr. Andrew D. Mizerak of Mizerak Adjusting Company Inc. investigated and inspected the damages on behalf of EMCASCO Insurance. Based upon his inspection and conversations with John Smerick, it was discovered that *a small hole in a metal value [sic] on a chlorine tank developed, which allowed chlorine gas to escape and contaminate the entire building. The vapor filled the room where the chlorine tanks are located. The vapor escaped through a vent in the wall of the chlorine room and entered the rest of the building through a nearby open window.* The only area of the building that did not sustain damage was the sealed laboratory. *The escaped chlorine gas turned to a ferric chloride solution upon contact with metal.* As a result, all of the metal fixtures and computer equipment are rusting." EMC Nov. 8, 2002 letter, exhibit B, brief in support of motion for summary judgment. (emphasis added) The letter referred the Sewage Authority to the Municipality Property Coverage Special Causes of Loss form (CP7121.3 E. 11-95) in the policy, which, on page 2 of 6, under section B. Exclusions, states:

"(2) We will not pay for loss or damage caused by or resulting from any of the following: . . .

"(c) Smoke, *vapor or gas from* agricultural smudging or *industrial operation.* . . .

"(d) (2) *Rust, corrosion,* fungus, decay, deterioration, hidden or latent defect *or any quality in property that causes it to damage or destroy itself;* . . .

"(1) *Discharge, dispersal, seepage, migration, release or escape of 'pollutants' unless* the discharge, dispersal, seepage, migration, release or escape *is itself caused by any of the 'specified causes of loss.'* But if the discharge, dispersal, seepage, migration, release or escape of 'pollutants' results in a specified cause of loss, 'we will pay for the loss or damage caused by that "specified cause of loss." ' " *Id.,* quoting pertinent provisions of policy (emphasis added); see also, exhibit H, brief in support of motion for summary judgment.[1]

The letter went on to cite the definition of "pollutant" in the Municipality Property Coverage form (CP7121 Ed. 1-99) under section H. Definitions, page 12:

"(1) *'Pollutants' means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor,* soot, *fumes,* acids, alkalis, *chemicals* and waste including Polychlorinated Biphenyls. Waste includes materials to be recycled, reconditioned or reclaimed." *Id.* (emphasis added); see also, p. 12 of exhibit F, brief in support of motion. On January 9, 2003, EMC denied coverage of the Sewage Authority's property damage claim, citing the above exclusions as the reason for the

---

1. Plaintiffs do not allege that the discharge of the chlorine gas was caused by a specified cause of loss.

denial. See exhibit C, brief in support. This denial of coverage by EMC resulted in the filing of the instant lawsuit.

## DISCUSSION

The standard to be used in determining whether to grant a motion for summary judgment is well-established. Pa.R.C.P. 1035.2(2) provides that summary judgment shall be granted "if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury."

In determining whether to grant summary judgment, a trial court must resolve all doubts against the moving party and examine the record in a light most favorable to the non-moving party. *Kelly v. Ziolko,* 705 A.2d 868, 870 (Pa. Super. 1997). Summary judgment may only be granted in cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law. *Id.* The moving party bears the burden of proving that there is no genuine issue of material fact and that judgment as a matter of law is appropriate. *Butterfield v. Giuntoli,* 448 Pa. Super. 1, 11, 670 A.2d 646, 651 (1995).

"Where an insurer relies on a policy exclusion as the basis for its denial of coverage . . . , the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such defense." *Madison Construction Co. v. Harleysville Mutual Insurance Co.,* 557 Pa. 595, 605, 735 A.2d 100, 106 (1999). (citation omitted)

"To determine whether . . . [defendant] has met its burden of proof, we rely on well-settled principles of contract interpretation.

"[T]he task of interpreting [an insurance] contract is generally performed by a court rather than by a jury. The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. *Where a provision of a policy is ambiguous,* the policy provision is to be *construed in favor of the insured* and against the insurer, the drafter of the agreement. *Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language. . . .*

"*Contractual language is ambiguous 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.' . . . This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. . . .* We will not, however, distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." *Id.,* 557 Pa. at 605-606, 735 A.2d at 106-107. (citations omitted) (emphasis added)

The first question the court must address in order to decide defendants' motion for summary judgment is whether chlorine meets the definition of a pollutant under the terms of the policy. The policy defines pollutants as "*any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor,* soot, *fumes,* acids, alkalis, *chemicals* and waste including Polychlorinated Biphenyls. . . .*" Exhibit F at p. 12, brief in support of motion for summary judgment. (emphasis added)

The policy does not define irritant or contaminant. However, "[w]ords of common usage in an insurance policy are to be construed in their natural, plain and ordinary sense, . . . and we may inform our understanding of these terms by considering their dictionary definitions." *Madison,* 735 A.2d at 108. (citations omitted)

As was explained in *Municipality of Mt. Lebanon v. Reliance Insurance Co.,* 778 A.2d 1228, 1233 (Pa. Super. 2001), another case involving the pollution exclusion of an insurance policy, "Webster's New Universal Unabridged Dictionary (1989) defines an *'irritant'* broadly as, inter alia, 'a biological, *chemical* or physical *agent that stimulates a characteristic function or elicits a response, esp[ecially] an inflammatory response.'* Similarly, it defines a *'contaminant'* as 'something that contaminates,' *while the verb to contaminate* is defined as *'to render impure or unsuitable by contact or mixture with something* unclean, *bad,* etc.' " *Id.* (emphasis added)

Chlorine is defined in the dictionary as "[a] *highly irritating,* greenish-yellow *gaseous halogen, capable of combining with nearly all other elements,* produced principally by electrolysis of sodium chloride and used widely to purify water, as a disinfectant and bleaching agent, and in the manufacture of many important compounds. . . ." American Heritage Dictionary (3d ed. 1996). (emphasis added)

It is clear from the above definitions that chlorine is a gaseous chemical agent which elicits an inflammatory response. Therefore, it fits the definition of an irritant as that term is used in the pollution exclusion of the policy. The chlorine in this case also meets the definition of a contaminant, since when it escaped the plant's chlorine

containment system, the chlorine combined with the oxygen and water in the plant's air, rendering the plant's air unsuitable by contact or mixture.[2] As either an irritant or a contaminant, chlorine clearly and unambiguously falls within the definition of pollutant in the policy's pollution exclusion.

The policy by its express terms excludes from its coverage any "[d]ischarge, dispersal, seepage, migration, release or escape of" pollutants, in this case, chlorine gas. See p. 12 of exhibit F, brief in support of motion for summary judgment. The court finds no ambiguity in those words given the specific facts of this case. The complaint states that "a component of the chlorine distribution system, a chlorine yoke which regulates the *discharge* of chlorine, failed resulting in the *discharge of chlorine* into the plant and surrounding areas. The yoke *developed a hole allowing* the chlorine to *leak* out." Complaint, para. 8. (emphasis added) "The product *failure* resulting in the *discharge* of the *chlorine* caused damage to the sewage treatment plant and property within the sewage treatment plant *through a chemical reaction resulting in corrosion and rust." Id.* at para. 9. (emphasis added)

Given the facts of the case, as well as the Sewage Authority's own description of what occurred, there can be no question that the chlorine gas in the plant escaped, seeped out, or was discharged or released, from the chlorine containment system. As such, the accidental discharge of the chlorine gas into the plant's atmosphere and the property damage caused by that discharge are

_____

2. The plant's air was thus given a corrosive quality it had not possessed before.

clearly and unambiguously excluded from coverage under the pollution exclusion of the policy.

The Sewage Authority protests that the cause of the property damage to the plant was the yoke failure, not the chlorine, and that yoke failure is not an excluded cause. However, the court finds that argument to be wholly without merit. Although it is true that a hole in the yoke initially allowed the chlorine to escape, the chlorine unquestionably caused the rust and corrosion damage for which the Sewage Authority now seeks compensation, not the hole in the yoke.

The Sewage Authority also argues that, because chlorine is safe when used as intended in the plant, it cannot be classed as an irritant or contaminant. This same argument was made in *Madison,* which involved a claim brought by a worker injured when he fainted and fell after being overcome by fumes from concrete sealer that had been applied in an enclosed area. The trial court and Judge Del Sole's dissenting Superior Court opinion found that "the curing compound was a useful product and therefore, when used as intended, could not be considered a pollutant." *Madison,* 735 A.2d at 105. However, the Supreme Court soundly rejected that argument, noting that the curing compound was "not innocuous; its harmful effects are well known." *Id.* at 107. The fact that it was a useful substance had no bearing on whether or not it was a pollutant.

Similarly, the Supreme Court found "no merit in Madison's claim that the pollutant in this case consisted solely of the fumes released by the application of Euco Floor Coat to the cement, and that what Madison 'brought on . . . to the premises' within the meaning . . . [of the

policy] was not the pollutant (that is, the fumes them-selves) but a non-polluting substance (Euco Floor Coat) in sealed containers." *Id.* The court said, "[W]hile the form of the substance may have changed, its chemical composition did not. Given that fact, as well as the all-encompassing language of the definition, Madison avers a distinction without a difference." *Id.* (footnote omitted)

In light of the above analysis, the argument that chlorine cannot be a pollutant because it is a useful substance which is safe when used as intended has no merit. Where the language of the policy is clear and unambiguous, the court is required to give effect to that language. The court holds that, as a matter of law, the pollution exclusion of the policy clearly and unambiguously excludes cover-age for the chlorine gas discharge which is the basis of the Sewage Authority's claim. As such, EMC was within its rights under the policy in denying that claim.[3] For all the foregoing reasons, defendants' motion for summary judgment is granted.

An appropriate order will be entered.

## ORDER

And now, May 20, 2005, after due consideration of defendants' motion for summary judgment, it is ordered, adjudged and decreed that summary judgment against plaintiff and in favor of defendants is hereby granted.

---

3. Having so found, there is no need for the court to address whether the other policy exclusions cited by EMC in its reservation of rights letter and denial letter also preclude recovery by the Sewage Author-ity.