

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-26-2009

# Alleman v. State Farm Life Ins

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4283

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Alleman v. State Farm Life Ins" (2009). *2009 Decisions.* Paper 1123.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1123

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-4283

_____

MARY L. ALLEMAN,

Appellant

v.

STATE FARM LIFE INSURANCE COMPANY,

Appellee

_____

On Appeal of a Decision of the United States District Court
for the Western District of Pennsylvania (No. 06-cv-00524)
District Judge: Gary L. Lancaster

_____

Submitted under Third Circuit L.A.R. 34.1(a)
January 13, 2009

Before: SLOVITER and BARRY, *Circuit Judges,*
and POLLAK, *District Judge.*[*]

(Filed:  June 26, 2009)
_____

OPINION

_____

[*]  Honorable Louis H. Pollak, Senior Judge of the United States District Court for
the Eastern District of Pennsylvania, sitting by designation.

POLLAK, <u>District Judge</u>

Appellant Dr. Mary L. Alleman ("Alleman") filed this putative nationwide class action in the Western District of Pennsylvania, alleging four counts against State Farm Life Insurance Company ("State Farm"): (1) breach of contract; (2) breach of fiduciary duty; (3) constructive fraud; and (4) unjust enrichment.  On August 2, 2006, in an unpublished Memorandum and Order addressing a motion to dismiss filed by State Farm, the District Court dismissed Alleman's breach of fiduciary duty claim but sustained her breach of contract, constructive fraud, and unjust enrichment claims.

On September 11, 2007, the District Court granted State Farm's motion for summary judgment as to the breach of contract claim, but denied State Farm's motions for summary judgment as to the constructive fraud and unjust enrichment claims, and also denied Alleman's motion for class certification.  On November 4, 2007, the District Court entered an order granting the parties' stipulated dismissal of Alleman's unjust enrichment and constructive fraud claims.

Alleman argues on appeal that the District Court erred in denying her breach of contract claim and her motion for class certification.  The nub of Alleman's claim is that State Farm breached its insurance contract by charging the same insurance premiums to juvenile insureds who do not smoke tobacco as it did to juvenile insureds who do.  The District Court had diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332.  We have appellate jurisdiction under 28 U.S.C. § 1291.  Because the District Court properly

granted summary judgment for State Farm on Alleman's breach of contract claim, we will affirm.

I.

Alleman is the owner of two life insurance policies issued by State Farm: (1) a whole life insurance policy insuring the life of her son, Samuel J. Doctor, and (2) a whole life insurance policy insuring the life of her son, Nathan Doctor. Both policies were issued on June 26, 2002, for face amounts of $15,000 each. Alleman's policies were purchased by her late husband, Dr. John S. Doctor. At the time the policies were purchased, Samuel was sixteen years old and Nathan was ten years old.

Each of the policies is identified as "Policy Class 1," which is explained in the policy as the "underwriting classification of the Basic Plan." Policy Class 1 is State Farm's standard classification for policies insuring juveniles, and in policies for juveniles State Farm does not distinguish between insured individuals on the basis of their tobacco use. The policies are virtually identical, with one notable exception: Samuel's policy provides that the "Annual Premium" is $139.80, payable for life, whereas Nathan's policy provides that the "Annual Premium" is $259.35, payable until 2012. State Farm has at all times charged Alleman the amounts for coverage indicated in the policies.

Both policies, which were signed by Alleman's late husband, state on their covers: "Read this policy with care. This is a legal contract between the Owner and State Farm

Life Insurance Company." The policies also state: "The policy contains the Basic Plan, any amendments, endorsements, and riders, and a copy of the application. The policy is the entire contract." Further, both policy contracts provide that the statements contained in the application "are representations and not warranties."

The standardized application forms, which State Farm uses for both adult and juvenile applicants, asked Alleman's late husband whether, *inter alia*, each child smoked or used tobacco products. Alleman's late husband designated both children to be non-smokers/non-tobacco users in these application forms.

Although State Farm has offered tobacco-distinct premiums for adults, State Farm has never offered tobacco-distinct premiums for insureds age twenty and under. Rather, it offers an aggregate juvenile premium rate that takes into account the mortality experience of all juveniles (both those who use tobacco and those who do not). Accordingly, for Samuel and Nathan's premiums, State Farm offered the "aggregate" or "blend" received by most of its insureds under the age of twenty.[1]

II.

We review the District Court's grant of summary judgment *de novo*. *TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 199 (3d Cir. 2001). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any

---

[1] Some applicants with serious health problems may have received a higher premium rating that took other factors into account.

affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *IFC Interconsult, AG v. Safeguard Int'l Partners, L.L.C.*, 438 F.3d 298, 317 (3d Cir. 2006).

Because subject-matter jurisdiction is based on the diversity of citizenship of the parties, because the parties agree that Pennsylvania law governs this dispute, and because the policies in question were purchased in Pennsylvania, we look to the substantive law of Pennsylvania to determine the rights and obligations of the parties.

III.

In the absence of an affirmative misrepresentation by the insurer or its agent about the contents of a policy, the plain and unambiguous terms of that policy demonstrate the parties' intent, and they control the rights and obligations of the insurer and the insured. *West v. Lincoln Benefit Life Co.*, 509 F.3d 160, 168-69 (3d Cir. 2007) (citations omitted). When a provision of the policy is clear and unambiguous, it must be enforced. *West*, 509 F.3d at 169 (citing *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)). By contrast, an unclear, ambiguous provision will be construed against the insurer and in favor of the insured. *Id.* (citing *Madison Constr. Co.*, 735 A.2d at 106).

Contractual language is ambiguous if it is reasonably susceptible to different constructions and capable of being understood in more than one sense. *Madison Constr. Co.,* 735 A.2d at 106. In determining whether a contract term is ambiguous, a court must consider the actual words of the agreements themselves, as well as any alternative

-5-

meanings offered by counsel.  *St. Paul Fire & Marine Ins. Co. v. Lewis*, 935 F.2d 1428, 1431 (3d Cir. 1991).

As the District Court properly held, the terms of the policies at issue here are unambiguous.  Both policies provide that "[t]he guaranteed values are based on the Insured's age last birthday and sex."  By the plain language of these policies, it is clear that the insureds' age and sex are the only mortality factors relevant to the rate that the insureds received under the policies.  Neither the policy contracts nor the applications for Samuel and Nathan's policies contain language suggesting that tobacco use forms any part of the mortality assumptions underlying the premiums quoted on the policies.  To the extent that mortality assumptions are discussed in the policies at all, age and sex are the only factors identified.   The policies provide that the 1980 Commissioner's Standard Ordinary Mortality Table ("CSO Table") is the basis for the "guaranteed values" provided by the policy.  The contracts do not refer to any tobacco-distinct CSO table.

Appellant argues that when the District Court considered whether the terms of the policy were ambiguous, it erred in failing to consider extrinsic evidence.  However, Pennsylvania's parol evidence rule mandates that when a written contract is clear and unequivocal, its meaning must be determined by its contents alone.  *East Crossroads Ctr., Inc. v. Mellon-Stuart Co.*, 205 A.2d 865, 866 (Pa. 1965).  In this case, the terms of the insurance contracts were clear and unambiguous; therefore, the District Court did not commit error in declining to consider extrinsic evidence.

Nevertheless, appellant argues, even if the terms of the contract were

unambiguous, the District Court should have invoked the reasonable expectations doctrine to trump the language of the policy. In Pennsylvania, the "reasonable expectations doctrine" provides a trial court with limited equity powers to avoid the ordinary rules of contract interpretation. *See Collister v. Nationwide Life Ins. Co.*, 388 A.2d 1346, 1353-54 (Pa. 1978). The reasonable expectations doctrine is intended to protect against the inherent danger, created by the nature of the insurance industry, of an insurer issuing a policy "quite different from what the insured requested" after the insured has already applied and paid for the policy. *See Tonkovic v. State Farm Mut. Auto. Ins. Co.*, 521 A.2d 920, 924-25 (Pa. 1987).

The Pennsylvania Supreme Court has made clear that the reasonable expectations of the insured should only trump the language of the contract where there are allegations of unilateral change of coverage provisions or where the insurer has made affirmative misrepresentations about the policy terms. *Madison Constr. Co.,* 735 A.2d at 105-06 (Pa. 1999). The reasonable expectations doctrine is therefore inapplicable in the instant matter, which involves the price term of the policy and no allegation of any affirmative misrepresentation by the insurer.

Under Pennsylvania law, the entire insurance contract consists of the policy along with the application, riders, and endorsements. *Syme v. Bankers National Life Ins. Co.*, 144 A.2d 845 (Pa. 1958). Appellant refers to this rule as the "complete policy doctrine" and argues that such a doctrine supports her position that State Farm breached its insurance contract to appellant by charging aggregate blend rate premiums rather than

lower "nontobacco" premiums. It is true that an application is an integral part of a policy, and the questions and answers contained therein are material to the risks that both the company and the insured assume. *Peters v. World Mut. Health & Acc. Ins. Co. of Pa.*, 213 A.2d 116, 118 (Pa. Super. Ct. 1965). However, the mere act of asking a question in an application has not been deemed by any Pennsylvania court to be a representation by the insurer. While an insurer has a right to rescind an insurance contract if an insured makes false representations in response to questions on an insurance application, *see Applebaum v. Empire State Life Assur. Soc'y*, 166 A. 768 (Pa. 1933), questions by the insurer do not amount to a representation by the insurer to charge any particular type of premium on the basis of the answer to those questions.

IV.

For the reasons given, we will affirm the judgment of the District Court granting summary judgment against the plaintiff on her breach of contract claim. Accordingly, we need not decide whether the District Court correctly denied appellant's motion for class certification.