J-E01002-22

2022 PA Super 204

| | |
|---|---|
| TIMOTHY A. UNGAREAN, DMD D/B/A SMILE SAVERS DENTISTRY, PC, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED PERSONS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CNA AND VALLEY FORGE INSURANCE COMPANY | |
| Appellants | No. 490 WDA 2021 |

Appeal from the Order Entered March 26, 2021
In the Court of Common Pleas of Allegheny County
Civil Division at No: GD-20-006544

| | |
|---|---|
| TIMOTHY A. UNGAREAN, DMD D/B/A SMILE SAVERS DENTISTRY, PC, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED PERSONS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CNA AND VALLEY FORGE INSURANCE COMPANY | |
| Appellants | No. 948 WDA 2021 |

Appeal from the Order Entered March 26, 2021
In the Court of Common Pleas of Allegheny County
Civil Division at No: GD-20-006544

BEFORE: PANELLA, P.J., BENDER, P.J.E., BOWES, J., LAZARUS, J., STABILE, J., KUNSELMAN, J., NICHOLS, J., McLAUGHLIN, J., and KING, J.

DISSENTING OPINION BY **STABILE, J.:**      **FILED: NOVEMBER 30, 2022**

I respectfully dissent. In affirming the trial court, the Majority endorses a strained construct of the Policy[1] that parses individual words under dictionary meanings to arrive at a disjointed and unreasonable interpretation of the operative phrase at issue - "direct physical loss or damage to property". In doing so, the Majority violates rules relating to contract interpretation that do not allow individual terms and provisions to be read in isolation. Individual terms must be considered under the policy as a whole. The Majority decision now places Pennsylvania as an outlier from the near unanimous conclusions reached by all state and federal courts to have considered the meaning of substantially similar language. I would accordingly reverse the trial court and grant summary judgment in favor of the Appellants, CNA and Valley Forge Insurance Company, and against the Appellee, Timothy A. Ungarean.

As the Majority explains, the operative facts are straightforward and not substantially in dispute. Appellants sold Ungarean an insurance Policy covering, among other things, "direct physical loss of or damage to Covered Property"—that Property being buildings in Aliquippa, Pennsylvania, and Pittsburgh, Pennsylvania, in which Ungarean operates his dentistry practice.

---

[1] Reference to the "Policy" herein is to the "Businessowners Special Property Coverage Form" and the "Business Expense and Extra Expense" endorsement purchased by Ungarean for his business. The Policy appears in the certified record as Exhibit "B" to Ungarean's June 5, 2020 complaint and Exhibit "A" to Appellants' July 30, 2020 answer and new matter.

Policy, Businessowners Special Property Coverage Form, at ¶ A. On March 6, 2020, in response to the spread of the Covid-19 virus, Governor Tom Wolf issued a Proclamation of Disaster Emergency. Subsequent executive orders followed, resulting in the temporary closure of many non-essential businesses. Ungarean's dental practice was designated a life-sustaining business, thus permitting him to continue to use his business premises for emergency procedures only. Nonetheless, like so many similarly situated parties, Ungarean suffered a significant disruption of his business activity during the Covid-19 pandemic. And like many similarly situated parties, Ungarean believed his economic losses due to the loss of use of his business premises were covered under his commercial property insurance. Ungarean filed a claim under the Policy seeking coverage for the economic losses he sustained from the inability to provide non-emergency dental care on his business premises.

Appellants, like many other insurers who have issued polices with substantially similar terms, denied the claim because Ungarean's commercial property did not suffer any physical damage. This issue has made its way through many of our nation's federal and state courts, but it is an issue of first impression in Pennsylvania. Contrary to the Majority, I would reach the same result as the almost unanimous majority of jurisdictions to have addressed this issue: the Policy does not cover mere *loss of use* of commercial property unaccompanied by physical alteration or other condition present in the property that renders the property itself unusable or uninhabitable.

The parties dispute whether the Policy covers Ungarean's claim and, if so, whether any of the Policy's exclusions applies. I conclude that no coverage exists and would reverse and remand for an order entering summary judgment[2] in favor of Appellants.

Under Ungarean's Policy, CNA agreed to pay for "direct physical loss or damage to Covered Property at the premises … caused by or resulting from a *Covered Cause of Loss*." Coverage Form, at A., p.1. (Emphasis added). Covered Property includes Buildings and Business Personal Property as defined in the Policy. *Id.* at A.1. "Covered Causes of Loss" are "Risks of Direct

---

[2] Summary judgment is appropriate where there is no genuine issue of fact as to the matter in controversy and the moving party is entitled to judgment as a matter of law. Pa.R.Civ.P. 1035.2(1); **Summers v. Certainteed Corp.**, 997 A.2d 1152, 1159 (Pa. 2010). The appeal before us presents a question of law; our standard of review is *de novo* and our scope of review is plenary. **Summers**, 997 A.2d at 1159-60.

An insured may invoke the Declaratory Judgments Act, 42 Pa.C.S.A. § 7531, *et seq.*, to determine whether an insurance contract covers an asserted claim. **Genaeya Corp. v. Harco Nat'l Ins. Co.**, 991 A.2d 342, 346 (Pa. Super. 2010). Where the language of the policy is clear, this Court must give it effect. **Indalex Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA**, 83 A.3d 418, 420 (Pa. Super. 2013), **appeal denied**, 99 A.3d 926 (Pa. 2014). "Also, we do not treat the words in the policy as mere surplusage and, if at all possible we construe the policy in a manner that gives effect to all of the policy's language." **Id.** at 421. We will construe any ambiguity in favor of the insured. **Id.** at 420-21. "Contract language is ambiguous if it is reasonably susceptible to more than one construction and meaning." **Pennsylvania Nat'l Mut. Cas. Ins. Co. v. St. John**, 106 A.3d 1, 24 (Pa. 2014). The insured bears the initial burden of establishing that the asserted claim is covered. **Erie Ins. Grp. v. Catania**, 95 A.3d 320, 322–23 (Pa. Super. 2014). If the insured is successful, the insurer bears the burden of establishing the applicability of an exclusion. **Id.**

Physical Loss", unless the loss is excluded under section B, Exclusions, the loss is limited under paragraph A.4, Limitations, or otherwise excluded elsewhere under the Policy. *Id.* at A.3.

The additional coverage purchased by Ungarean in the form of a "Business Income and Extra Expense" endorsement, the text of which forms the dispositive issue in this appeal, provides in pertinent part:

1. **Business Income**
   b. We will pay for the actual loss of **Business Income** you sustain due to the necessary **"suspension"** of your "operations during the **"period of restoration."** The "suspension" must be caused by **direct physical loss of or damage to property** at the described premises. The loss or damage must be caused by or result from a **Covered Cause of Loss.** ….

   \*\*\*

2. **Extra Expense**
   a. means reasonable and necessary expenses you incur during the **"period of restoration"** that you would not have incurred if there had been no **direct physical loss of or damage to property** caused by or resulting from a **Covered Cause of Loss**.

   b. We will pay Extra Expense (other than the expense to repair or replace property) to:

   1. Avoid or minimize the "suspension" of business and to continue "operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement premises or temporary locations; or

   2. Minimize the suspension of business if you cannot continue operations.

CNA Policy, Business Income and Extra Expense Endorsement, at 1.b., 2a, 2b. (Emphasis added).

A "suspension" occurs under the Policy when the insured suffers the "partial or complete cessation of […] business activities." Policy, Business Owners Special Property Coverage Form, ¶ G.29.

The Policy defines "period of restoration" in relevant part as a period of time that:

> a. Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and
>
> b. Ends on the earlier of:
>
> > 1. The date **when the property at the described premises should be repaired, rebuilt, or replaced** with reasonable speed and similar quality; or
> >
> > 2. The date when business is resumed at a new, permanent location.

*Id.* at ¶ G.20. (Emphasis added).

When the Policy is read as a whole, as it must be, it is clear that a claim for lost business income and extra expenses only will be covered if the property sustains a tangible loss or damage that causes a suspension of business activities. If these conditions are satisfied, then coverage is provided, but only for the period of restoration during which the property has to be rebuilt, repaired, or replaced. When the term "direct physical loss or damage to property" is read within the context of the entire Policy, the conclusion is inescapable that coverage is not provided for purely economic

loss. The Policy unambiguously ties coverage for insured business income and extra expense losses to occurrences where there is some tangible damage to or tangible loss of the property for coverage to apply—a "direct physical loss of or damage to property". As will be explained, this is the only reasonable interpretation of this policy provision. Construing the reference to "direct physical loss or damage to property" to pertain to purely economic loss without property damage, as the Majority concludes, results only from a strained interpretation of the Policy and does so without giving full effect to all the Policy provisions.

Words of common usage in an insurance policy are to be construed in their natural, plain, and ordinary sense. *Madison Const. v. Harleysville Mut. Ins.*, 735 A. 2d 100 (Pa. 1999). Language in a policy is ambiguous if it is susceptible to more than one reasonable interpretation. *Kurach v. Truck Ins. Exch.*, 235 A.3d 1106, 1116 (Pa. 2020). A word is not ambiguous, however, simply because it is undefined. *Gemini Ins. Co. v. Meyer Jabara Hotels LLC,* 231 A.3d 839, 849 (Pa. Super. 2020). Instead, courts must read a policy as a whole and construe its meaning according to its plain language. *Madison,* 735 A.2d at 108. Individual terms and provisions cannot be read in isolation; a policy must be considered as a whole. *Pennsylvania Nat. Mut. Cas. Ins. Co.v. St. John*, 106 A.3d 1, 14 (Pa. 2014). Courts cannot distort the meaning of language or resort to a strained contrivance in order to find

an ambiguity. ***Madison***, 735 A.2d at 106 (**citing *Steuart v. McChesney*,** 444 A.2d 659, 663 (Pa. 1982)).

The trial court, construing the phrase "direct physical loss of or damage to…", reasoned that the disjunctive "or" between "direct physical loss of" and "damage to" supports a reasonable reading of the Policy whereby a "direct physical loss" need not necessarily result from physical or structural damage:

> The spread of COVID-19, and a desired limitation of the same, had a close logical, causal, and/or consequential relationship to the ways in which [Ungarean] materially used its property and physical space. Indeed, the spread of COVID-19 and social distancing measures (with or without the Governor's orders) caused [Ungarean], and many other businesses, to *physically* limit the use of property and the number of people that could inhabit *physical* buildings at any given time, if at all. Thus, the spread of Covid-19 did not, as [Appellants contend], merely impose economic limitations. Any economic losses were secondary to the businesses' *physical* losses.

Trial Court Opinion, 6/1/21, at 16-17 (emphasis in original; citation omitted). Regarding the "period of restoration" provisions, the trial court reasoned that they "merely impose[] a time limit on available coverage, which ends whenever any [repairs], if undertaken, would have been completed with reasonable speed and similar quality." ***Id.*** at 19. Because it merely imposes a time limit, the trial court found that the amount of insurance provision did not alter its interpretation of "physical loss or damage." ***Id.*** The Majority finds itself in full agreement with the trial court's reasoning and conclusions, and affirms the decision below based primarily on the trial court's opinion. Majority Opinion, at 2.

I disagree, and conclude that economic loss unaccompanied by a physical alteration to the property does not trigger coverage under this commercial property insurance policy—a result that is overwhelmingly and persuasively supported by decisions from across the country. In **Delaware Valley Mgmt., LLC v. Continental Cas. Co.**, 572 F.Supp.3d 119 (E.D.Pa. 2021), for example, the plaintiff medical providers were prohibited to offer elective surgeries due to the Covid-19 pandemic. They alleged that their properties became contamination zones and that their ability to conduct business was significantly limited. **Id.** at 125. Plaintiffs argued, as Ungarean did here, that "physical loss of or damage to property" was reasonably susceptible of more than one meaning and therefore ambiguous. The Federal District Court disagreed:

> Here, not only was there no physical alteration to the Covered Properties, but there was also no loss of utility of the buildings. Indeed, Plaintiffs admit that they "could remain open, but only for essential surgeries, not elective." (Am. Compl. at ¶ 77.) And Plaintiffs' loss of their ability to perform elective surgeries does not render the building "uninhabitable." Rather, their ability to conduct business was limited, which resulted in purely economic losses.

**Id.** at 129. Likewise, damage to property exists where there is "actual structural damage" or where damage "unnoticeable to the naked eye render[s] the property entirely useless and uninhabitable." **Id.** at 130. The **Delaware Valley** Court noted that the amount of insurance was tied to the period of physical restoration, and that the period of restoration portion of the

policy made no sense unless the damage in question was physical damage. ***Id.*** at 130-31.

Similarly, the Third Circuit Court of Appeals, applying the law of New York and New Jersey, held that the presence of asbestos does not constitute "physical loss or damage" unless it is present in the air in quantities sufficient to render the building "uninhabitable and unusable." ***Port Authority of New York and New Jersey v. Affiliated FM Ins. Co.***, 311 F.3d 226, 232, 236 (3d Cir. 2002); ***see also***, ***Round Guys Brewing Co. v. Cincinnati Ins. Co.*** 2021 LW 4306027 (E.D.Pa. September 22, 2021) (holding that a loss of business due to governmental orders, unaccompanied by physical property damage, does not trigger coverage).

Likewise in ***Spector Gadon Rosen Vinci P.C. v. Valley Forge Ins. Co.***, 2021 Phila. Ct. Com. Pl. LEXIS 16 (June 16, 2021), the trial court found that the plaintiff law firm's loss of use of its office space pursuant to Governor Wolf's orders did not trigger coverage under a policy covering direct physical loss of or damage to its commercial property. Applying ***Port Authority***, the trial court found that physical damage to the insured property is necessary, especially in light of language in the policy contemplating a period of restoration during which physical repairs take place. ***Id.*** at *10.

Throughout the country, courts considering similar policy language in similar circumstances have found no coverage. In ***Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.***, 22 F.4th 450 (5th Cir. 2022) the Court

held that the plaintiff's inability to provide dine-in services was an economic loss unrelated to the insured's property:

> TBB has failed to allege any tangible alteration or deprivation of its property. Nothing physical or tangible happened to TBB's restaurants at all. In fact, TBB had ownership of, access to, and ability to use all physical parts of its restaurants at all times. And importantly, the prohibition on dine-in services did nothing to physically deprive TBB of any property at its restaurants.

*Id.* at 456; *see also*, *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 402 (6th Cr. 2021) (noting that direct physical loss and direct physical damage are the "North Star of this property insurance policy from start to finish"); *Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.,* 499 F. Supp.3d 288 (S.D. Miss.2020) (holding that insurance against physical loss of or damage to property covers damage to the insured's building and personal property but not the operations).[3]

---

[3] For representative federal cases holding that a physical alteration to the property is necessary to trigger coverage, *See, e.g.*, *10012 Holdings, Inc. v. Sentinel Ins.*, 21 F.4th 216 (2d Cir. 2021); *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303 (7th Cir. 2021); *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327 (7th Cir. 2021); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141 (8th Cir. 2021); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F. 4th 885 (9th Cir. 2021); *Goodwill Indus. of Cent. Okla.*, 21 F.4th 704 (10th Cir. 2021).

For representative state court cases, *See, e.g.*, *Inns by the Sea v. California Mut. Ins. Co.*, 71 Cal.App.5th 688 (Cal. Ct. App. 2021); *Indiana Repertory Theatre v. Cincinnati Cas. Co.*, 180 N.E.3d 403 (Ind. Ct. App. 2022); *Wakonda Club v. Selective Ins. Co. of Am.*, 973 N.W.2d 545 (Iowa 2022); *Verveine Co. v. Strathmore Ins. Co.*, 184 N.E.3d 1266 (Mass. 2022); *Gavrilides Mgmt. Co., LLC v. Michigan Ins. Co.*, ____ N.W. ____
*(Footnote Continued Next Page)*

Instantly, the trial court relied on *In re Soc'y Ins. Co. Covid-19 Bus. Interruption Prot. Ins. Litig.*, 521 F.Supp.3d 729 (N.D. Ill. 2021). There, the Federal District Court found a factual issue as to whether the insured restaurant and hospitality businesses suffered a direct physical loss of their property as a result of the loss of in-person dining during the Covid-19 pandemic. The insureds argued that the presence of Covid-19 on their premises was physical damage that created the loss. *Id.* at 732. The District Court reasoned that the policy in question did not contain a virus exclusion. *Id.* at 735. Also, like the Majority and trial court instantly, the Northern District of Illinois relied on the disjunctive "or" in "direct physical loss of or damage to …" supported an interpretation of the policy language whereby physical loss meant something different from physical damage. *Id.* at 741.

In any event, the weight of authority is to the contrary and the Seventh Circuit has implicitly overruled *In re Soc'y*, concluding that commercial property policies do not provide coverage for business interruptions due to Covid-19. *Sandy Point Dental*, 20 F.4th 327 (7th Cir. 2021). Likewise, in *Hair Studio 1208, LLC v. Hartford Underwriter's Ins. Co.*, 539 F.Supp.3d 409 (E.D.Pa. 2021), the Federal District Court cited *Port Authority* for the

---

2022 WL 301555 (Mich. Ct. App. Feb. 1, 2022); *MAC Prop. Grp. v. Selective Fire and Cas. Ins. Co.*, ____ A.3d ____ (N.J. App. Div. June 20, 2022); *Nail Nook, Inc. v. Hiscox Ins. Co. Inc.*, 182 N.E.3d 356 (Ohio Ct. App. 2021); *Collectivo Coffee Roasters Inc. v. Society Ins.*, 974 N.W.2d 442 (Wis. 2022).

proposition that physical loss exists when a structure is "uninhabitable and unusable." *Id.* at 417. Pure economic loss is not property damage. *Id.* Said another way, policy language covering "direct physical loss or damage" unambiguously requires that the "claimed loss or damage must be physical in nature." *Id.* at 418 (quoting *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F.Supp.2d 280, 289 (S.D.N.Y. 2005)).[4]

Cases cited by Ungarean and various *amici* do not refute this point. In *Motorists Mut. Ins. Co. v. Hardinger*, 131 Fed. App'x 823, 826 (3d Cir. 2005), for example, the Third Circuit found a question of fact as to whether an e coli contamination of well water was a "physical loss" under a homeowner's policy. The family alleged they vacated the house because all of them experienced persistent illnesses and skin problems upon moving in. *Id.* at 824. Thus, the facts in *Hardinger* met the test set forth in *Port Authority of New York*, wherein the Third Circuit wrote that invisible damage constitutes physical loss where it renders the building unusable or uninhabitable. 311 F.3d at 236 The same is true of cases where buildings became unusable due to the presence of gas or noxious fumes. *See Essex Ins. Co. v. BloomSouth Flooring Corp.*, 562 F.3d 399 (1st Cir. 2009) (holding that the presence of an unexplained chemical odor sufficiently alleged

---

[4] In *Philadelphia Parking Auth.*, the Southern District of New York held that economic loss stemming from loss of business after the September 11, 2001 terrorist attacks was not covered.

a physical injury to the insured's building, thus triggering the insurer's duty to defend); **TRAVCO Ins. Co. v. Ward**, 715 F.Supp.2d 699, 707 (E.D.Va. 2010) (holding that a noxious odor emitting from defective drywall constituted a direct physical loss), **aff'd**, 504 Fed. App'x 251 (4th Cir. 2013) **Western Fire Ins. Co. v. First Presbyterian Church**, 437 P.2d 52 (Colo. 1968) (holding that the insured suffered a direct physical loss where gasoline accumulated in the soil under and around the insured's building and gasoline vapors rendered the building uninhabitable).

In these cases, the condition that caused the loss, though not visible, was physically present in the insured property, not easily remediable or removable, and/or not likely to dissipate quickly on its own.[5]  In contrast, the case before us arises from restrictions on Ungarean's use of his property in response to a highly contagious airborne virus that workers and patrons might bring in with them and spread to others.  Ungarean did not allege that the Covid-19 virus was present on any surface in his covered property, nor did he allege that its temporary presence in his covered property was the reason for his prolonged inability to perform nonemergency dental work.

---

[5]  Much has been made of the observation in Couch on Insurance that "physical alteration" is the most common coverage trigger for a policy insuring against "physical loss or damage" to covered property.  COUCH ON INSURANCE, § 148:46 (3d ed. 2000).  Because the analysis in § 148:46 neither relied on nor anticipated the present circumstances, I do not find it helpful.  In my view, neither side of this debate advances its argument by citing or attacking the conclusions reached in § 148:46.

In light of all the foregoing, the proper disposition of this appeal is clear. The provisions of the Policy at issue here cover commercial property. Ungarean does not allege that any covered property was destroyed, damaged, or in need of repair, rebuilding, or replacing. He had access to his business property at all times; there was no physical alteration to the property itself that prevented him from using it as normal. Rather, he was limited to performing emergency dental procedures so as to limit the number of patients coming in and thereby limit the potential for person-to-person spread of Covid. There is no reasonable reading of the phrase "direct physical loss" that applies to the covered property involved in this case.[6] Ungarean's claim fails for this reason alone.

---

[6] The trial court justified its result by relying in part on a dictionary definition of loss: "loss is defined as DESTRUCTION, RUIN, … [and/or] the act of losing possession [and/or] DEPRIVATION …" Trial Court Opinion, 8/2/21, at 12 (pagination ours) (**citing** https://www.merriam-webster.com/dictionary/loss). Given the disjunctive "or" between "loss" and "damage" in the Policy language, the trial court concluded that loss must mean something other than destruction. Therefore, the trial court relied on the portion of the definition defining loss as "the act of losing possession [and/or] DEPRIVATION." *Id.* We are unable to confirm the accuracy of the trial court's citation. Merriam Webster's online dictionary contains seven entries under "loss." The first entry, "DESTRUCTION, RUIN" appears exactly as quoted in the trial court's opinion. https://www.merriam-webster.com/dictionary/loss (last visited October 13, 2022). The remainder of the definition as quoted and relied on by the trial court—"the act of losing possession [and/or] DEPRIVATION"—appears nowhere. *Id.* This definition does not support a conclusion that "direct physical loss", as used in the Policy, encompasses a mere loss of use.

The Majority's argument from the Policy's disjunctive language is unavailing. According to the Majority's reading of "direct physical loss of **or** damage to…", the phrases on either side of the word "or" must mean something different. Indeed, they do, as is evident from the period of restoration clause (and the extra expense clause, quoted above, which also ties itself to the period of restoration). The period of restoration is the time period necessary to "repair, replace, or rebuild" any part of the covered property that had been "damaged or destroyed." Thus, where there is a "physical loss"—*i.e.* total loss or destruction of covered property—the period of restoration is the time necessary to rebuild or replace it. Where there is partial "damage to" covered property the period of restoration is the time necessary to make repairs. Thus, the appropriate, and by far the most reasonable, distinction between "physical loss" and "damage" is to read the former as applying in cases of total loss and the latter as applying in cases of partial damage. The terms "repair, replace, or rebuild" make sense only in the case of physical damage to or physical destruction (loss) of the property. They make no sense in a case of pure economic loss. *See e.g.*, *Dino Drop, Inc. v. Cincinnati Ins. Co.*, 544 F.Supp.3d 789, 798 (E.D.Mich. 2021) (holding that physical loss and damage "can only be reasonably be construed as extending to events that impact the physical premises completely (loss) or partially (damage).").

The Majority's reading—that the "period of restoration" is merely a time limit for coverage that has no bearing on the meaning of "direct physical loss"—does not withstand scrutiny. **See** Majority Opinion, at 12. In addition to its failure to account for the words "repair, rebuild, or replace," it is not clear how the "period of restoration" is to be computed in the case before us, wherein the insured has alleged neither destruction of or damage to covered property nor the need to rebuild, repair, or replace any part of it. Rather, Ungarean alleges a partial loss of use of his property because he was forbidden to perform non-emergency dental procedures. There simply was no period of restoration involved in this case.

The Majority and the trial court have engaged in a strained reading of a property insurance policy in order to find coverage for a purely economic loss. The conclusion they reach is unsupportable and unreasonable under the plain language of the Policy and case law governing the interpretation of insurance policies. While I sympathize with the plight of the many business owners who have suffered, and continue to suffer, significant financial hardship because of the Covid-19 pandemic, this Court must render decisions based on the law and the facts of each case. In my view, the applicable law, the Policy language, and the facts before us lead inexorably to the conclusion that the trial court erred in granting summary judgment in favor of Ungarean and denying Appellants' competing motion for summary judgment.

Alternatively, the Majority concludes that none of the Policy exclusions apply to coverage claimed by Ungarean and therefore, the trial court properly declared that CNA was obligated to provide business loss and extra expense coverage. I conclude this alternative analysis to be unnecessary. If there is no right to coverage under the insuring provision, then it is a non sequitur to consider if any exclusions apply.

Likewise, I disagree with the trial court's conclusion, affirmed by the Majority, that Ungarean was entitled to coverage under the Civil Authority Provision of the Policy that provides:

> When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises. The civil authority action must be due to **direct physical loss of or damage to property** at locations, other than described premises, caused by or resulting from a Covered Cause of Loss.

CNA Policy, Civil Authority, at 1. (Emphasis added). I conclude that Ungarean failed to establish a claim for coverage under the Policy's Civil Authority provision, which provides in essence that the coverage exists when a civil authority limits Ungarean's access to his own covered property because of direct physical loss of or damage to property at another location. The trial court found that other properties suffered direct physical loss or damage for the same reason it found that Ungarean's business premises were damaged. I reach a different conclusion for the reasons already explained.

I respectfully dissent, and would reverse the trial court and enter judgment in favor of Appellants CNA and Valley Forge Insurance Company, and against Appellee, Timothy A. Ungarean.

President Judge Emeritus Bender, Judge Bowes, and Judge King join the dissenting opinion.